IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-358 |
| | : | |
| UNIVERSITY OF THE SCIENCES | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                   **February 14, 2019**

Plaintiff John Doe (Doe) was accused by two women of sexual assault at the beginning of his senior year at Defendant University of the Sciences (the University). After an outside investigator concluded it was more likely than not Doe committed the assaults, the University sought to expel him. Doe appealed his tentative expulsion through the University's internal processes. His appeal was denied, and, on January 18, 2019, Doe was formally expelled. On January 24, 2019, Doe filed a verified complaint against the University and the instant motion for a preliminary injunction reversing his expulsion pending the outcome of this case.[1] Doe claims he will likely succeed on the merits of at least two of the claims in his verified complaint: (1) his claim for breach of Title IX, which prohibits sex-based discrimination by higher education institutions receiving federal funds, and (2) his claim for breach of contract based on the University's alleged violation of its written disciplinary procedures. Because the Court finds

---

[1] Although Doe's motion is titled as one for a "Temporary Restraining Order and Preliminary Injunction," the Court construes Doe's request as one for a preliminary injunction because each party: (1) was given notice of Doe's request, (2) participated fully in a multi-day evidentiary hearing, during which both sides presented documentary and testimonial evidence, and (3) submitted briefs prior to the hearing and proposed findings of fact and conclusions of law after the hearing. *See BABN Technologies Corp. v. Bruno*, No. 98-3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998). Deciding this motion as one for a preliminary injunction does not alter the parties' substantive burdens, but does afford Doe the immediate right to appeal this Court's decision. *See* 28 U.S.C. § 1292(a)(1) (vesting courts of appeals with jurisdiction to hear appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions").

Doe has failed to establish a likelihood of success on the merits of either claim, the Court will deny the motion.

**FINDINGS OF FACT**

1. Doe graduated from high school in 2015, and subsequently enrolled at the University, a private university which receives federal funds, located in Philadelphia, Pennsylvania. Hr'g Tr. 10:24-25, Jan. 28, 2019, ECF No. 8.

2. The University has a Student Handbook, which contains disciplinary procedures and incorporates the University's Sexual Misconduct Policy, both of which were in force at the time of the events giving rise to this litigation. *See* Mot. for TRO & Prelim. Inj. Exs. B and C, ECF No. 2.

3. Doe attended the University until January 18, 2019, the date on which his expulsion from the University following an investigation into purported sexual misconduct became final. *Id.* 21:12-20.

4. While at the University, Doe majored in Biomedical Sciences and minored in Microbiology and planned to attend medical school thereafter. *Id.* 11:19-21; 12:3-7.

5. On August 24, 2018, Jane Roe 1 reported to the University Doe sexually assaulted her on or about November 3 or 4, 2017, by failing to obtain her consent prior to engaging in intercourse without a condom. *Id.* 113:19-22; Report of Investigation 5.[2]

6. On August 30, 2018, Jane Roe 2, a sorority sister of Jane Roe 1, reported to the University Doe had sexually assaulted her on or about January 14, 2018, by engaging in sexual

---

[2] The Report of Investigation was provided to the Court during the January 28, 2019, hearing and authenticated by Doe and referred to by both counsel throughout the hearing. Hr'g Tr. 47:13-20, 109:19-110:5, 124:11-13, Jan. 28, 2019. It was not, however, marked as an exhibit in the transcript.

intercourse with her while she was incapacitated. Hr'g Tr. 113:23-25, Jan. 28, 2019; Report of Investigation 1.

7. Also on August 30, 2018, the University initiated an investigation by providing Doe with a written Notice of Sexual Misconduct Investigation during a meeting between Doe and the University's Title IX Coordinator, which stated:

> The University of the Sciences is conducting an investigation into allegations made by COMPLAINANT against the RESPONDENT of sexual misconduct that occurred on or about Nov. 3/4 , 2017; Jan. 2018 at Respondent's Apartment. The allegations include the following prohibited conduct as defined by the *University of the Sciences Sexual Misconduct Policy* (attached): [X] Sexual Assault I -- Non-Consensual Sexual Intercourse.

Mot. for TRO & Prelim. Inj. Ex. A at 1, ECF No. 2 (emphasis in original); *see also* Hr'g Tr. 26:11-23, Jan. 28, 2018.

8. Doe testified he understood, based on the Notice of Sexual Misconduct Investigation quoted above: (1) Jane Roe 1 and Jane Roe 2 were his accusers, (2) the dates and locations of the purported assaults, (3) Jane Roe 1 and Jane Roe 2's allegations were of a sexual nature; and (4) the specific portion of the University of the Sciences Sexual Misconduct Policy he allegedly violated. *See* Hr'g Tr. 69:5-70:7.

9. Within a week of receiving the Notice of Sexual Misconduct Investigation, Doe retained an attorney-advisor. Hr'g Tr. 70:17-19, Jan. 28, 2019.

10. An in-house University investigator conducted initial interviews of Jane Roe 1 and Jane Roe 2, as well as two witness, on August 24, 28, and 30, 2018. Report of Investigation 2-3.

11. Sometime after August 30, the University, acting through a committee formed to address Title IX issues, retained Anne Kane, Esq., an attorney and partner at the law firm

3

Schnader Harrison Segal & Lewis LLP, to investigate the allegations against Doe. Hr'g Tr. 93:15-94:16, Jan. 28, 2019.

12. Kane's report states, as part of the investigation, she interviewed Jane Roe 1 on September 11, 2018, and October 23, 2018; Jane Roe 2 on September 13, 2018, and October 23, 2018; and Doe on October 2, 2018, and October 25, 2018. Report of Investigation 3-4.

13. Kane also interviewed seven individuals identified by Doe as having information relevant to the allegations, including four male and three female students, and others identified by Jane Roe 1 and Jane Roe 2. *Id.* at 4.

14. On November 1, 2018, the University's interim Title IX coordinator, Jessica Rickmond, informed Doe that Kane was nearing the conclusion of her investigation and a "preliminary report" was available for Doe's review. Hr'g Tr. 78:14-22, Jan. 28, 2019.

15. Doe and his attorney advisor were then permitted to review Kane's preliminary report, and its attachments (including witness statements), in Ms. Rickmond's offices; however, they were not allowed to retain physical (or digital) copies of the documents. *Id.* 42:22-43:10.

16. Doe reviewed the preliminary report, including the witness reports, on several different occasions. The reported included statements from all but one of the witnesses identified by Doe. *Id.* 44:2-8.; 44:20-45:7. Doe testified the suggested witness was omitted because the witness was identified in order to provide "positive character statements." *Id.* 45:2-7.

17. The preliminary report did not include any of Kane's conclusions as to Doe's responsibility for violating the Sexual Misconduct Policy. *Id.* 43:11-14.

18. Doe submitted a written response to Kane's preliminary report, which recounted, inter alia, medical issues he argued made it impossible for him to have assaulted Jane Roe 1 in a

manner consistent with her version of the claimed assault. Final Statements to Prelim. Report Def.'s Hr'g Ex. 2 at 2-4.

19. Kane completed her final investigative report on November 13, 2018. Report of Investigation 14.

20. Kane concluded it was more likely than not Doe committed the allegations reported by Jane Roe 1 and Jane Roe 2. *Id.*

21. The final report referenced two interviews of Doe, two of Jane Roe 1, two of Jane Roe 2, and interviews of ten separate witnesses. Report of Investigation 4. The document also indicated the investigator received two written statements from Doe, Roe 1, and Roe 2--one from each individual before reviewing the preliminary Report of Investigation, and one from each individual after reviewing the preliminary Report of Investigation.

22. Doe was then permitted to review the final report and its attachments in Rickmond's offices under the same conditions applicable to his review of the preliminary report. Hr'g Tr. 47:13-16, Jan. 28, 2019.

23. Doe reviewed the final report on three separate occasions, including once with his attorney advisor. *Id.* 48:4-11. Doe was prohibited from retaining a copy of Kane's final report, but attempted to circumvent this rule by dictating the report, verbatim, into his laptop using voice-to-text software. *Id.* 48:14-45:6.

24. After Doe had had an opportunity to review Kane's final report, the University convened a "Sanctions Board," to determine Doe's punishment. *Id.* 100:18-101:12.

25. A Sanctions Board is composed of three members of the University's faculty or staff and meets to determine the appropriate discipline for violations of University policy. *Id.* 100:20-24.

26. The Sanctions Board was convened in this case, and received Kane's final report, including its attachments, as well as a written impact statement from Doe. *Id.* 82:8-16, 100:25-101:7.

27. On December 7, 2018, Doe was notified that the Sanctions Board determined the appropriate punishment was expulsion, with a notation of the misconduct on his academic record. *Id.* 82:22-24.

28. Doe then sought review of his tentative expulsion by an Appeals Board, which consisted of three University faculty or staff members (none of whom sat on the Sanctions Board). *Id.* 82:25-86:5, 132:1-11.

29. Doe submitted a six-page letter to the Appeals Board raising various issues with respect to the integrity of the disciplinary process and the severity of the punishment. *Id.* 84:1-3.

30. On January 18, 2019, the Appeals Board denied Doe's appeal, and his expulsion became final. *Id.* 94:8-11.

31. On January 24, 2019, Doe filed his verified complaint against the University. Verified Compl., ECF No. 1. Contemporaneously, he filed the instant motion. Mot. for TRO & Prelim. Inj.

32. On January 28 and 29, 2019, the Court conducted a hearing on the motion, during which Doe and Rickmond testified, and the parties, both of whom were represented by counsel, presented documentary evidence and argument.

33. On February 8, 2019, each party filed proposed findings of fact and conclusions of law. *See* University's Proposed Findings of Fact and Conclusions of Law, ECF No. 11; Doe's Proposed Findings of Fact and Conclusions of Law, ECF No. 12.

**DICUSSION**

In order to obtain a temporary restraining order or preliminary injunction pursuant to Federal Rule of Civil Procedure 65, a movant "must meet the threshold for the first two 'most critical' factors: it must demonstrate [1] that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and [2] that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Assuming the movant satisfies this initial burden, a district court must consider two additional factors: (3) "the possibility of harm to other interested persons from the grant or denial of the injunction" and (4) the public interest. *Id.* A district court has the discretion to grant a preliminary injunction only if all four factors taken together balance in favor of granting the relief. *Id.*

Doe seeks injunctive relief based on his claims for violation of Title IX and breach of contract.[3] The Court will deny his request for relief because he has failed to meet the threshold requirement of showing likely success on the merits of either one.[4]

The Court turns first to whether Doe has established a likelihood of success on the merits of his Title IX claim. Title IX is a civil rights statute which states "[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to bar the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Doe v. Columbia*

---

[3] Doe's verified complaint contains causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence, which he does not advance in support of his request for injunctive relief. As a result, those claims will not be considered here.

[4] Because the Court finds Doe failed to establish likely success on the merits, it will not address the parties' arguments with respect to irreparable harm, the possibility of harm to others from granting the injunction, or the public interest in granting injunctive relief.

*Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (internal quotation omitted). Although there are a number of general theories of Title IX liability in the context of student disciplinary proceedings, Doe advances two here: the "erroneous outcome" theory and the "selective enforcement" theory. Hr'g Tr. 25:16-26:10, Jan. 29, 2019, ECF No. 9. The Court finds, on the limited record before it, Doe has failed to establish likely success on the merits of either one.

In an "erroneous outcome" claim, the plaintiff alleges he or she is actually innocent and was wrongly found to have committed the offense for which he or she is being punished. *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 822-24 (E.D. Pa. 2017). To be successful, a plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the discipline" and "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *see also Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018); *Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 822-23.[5] Even assuming Doe has shown an articulable doubt on the accuracy of the disciplinary process, he has failed to meet his burden to show particular circumstances suggesting the articulable errors were motivated by gender bias.[6]

---

[5] These cases generally deal with erroneous outcome claims in the context of motions to dismiss. The Court acknowledges the difference between the more burdensome standard applicable to preliminary injunction requests, i.e., a likely success on the merits, and the less burdensome one applicable to motions to dismiss, i.e., entitlement to relief "under any reasonable reading of the complaint." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016) ("Given the significant differences between [the standards applicable to preliminary injunctions and motions to dismiss], a plaintiff's failure to meet his burden on a motion for a preliminary injunction does not mean *ipso facto* that the complaint fails to state a claim.").

[6] At the January 29, 2019, hearing, the parties debated the applicability of *Doe v. Baum*, a case in which the Sixth Circuit found, inter alia, a university's failure to provide a student accused of sexual assault the opportunity to cross-examine his accuser, where discipline turned on credibility, was sufficient to establish an "articulable doubt" as to the accuracy of the disciplinary process for Title XI purposes. 903 F.3d at 585. A district court in the District of New Jersey recently declined to apply *Baum*, noting the Third Circuit had not adopted its reasoning, and that,

As a general matter, gender bias may be shown by introducing "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. However, these are not the only methods by which a plaintiff may meet his burden. For example, the Sixth Circuit, in *Baum*, found the plaintiff sufficiently alleged gender-motivated bias where he alleged external pressure (i.e., news media attention) on the university to "prove it took complaints of sexual misconduct seriously," and the university's disciplinary board credited exclusively female testimony and rejected all male testimony. 903 F.3d at 586. Similarly, in *Trustees of the University of Pennsylvania*, the district court denied a motion to dismiss an erroneous outcome Title IX claim where the plaintiff alleged, inter alia, (1) the university "designed its disciplinary procedures to favor female complainants and disfavor the respondents, who are almost always male"; (2) training materials for university employees involved in disciplinary proceedings "encourage the employees to believe the accuser and presume the accused's guilt"; and (3) certain unidentified university personnel "publicly advocated for other colleges and universities to combat sexual violence on campuses and strengthen protection of victims by engaging in 'victim-centered responses.'" 270 F. Supp. 3d at 823-24 (alteration in original). The Court also noted the university had been the subject of at least two negative news articles about its response to complaints of sexual assault. *Id.* at 824.

---

even if the Third Circuit had adopted the reasoning, the plaintiff failed to establish the student discipline turned on witness credibility. *Doe v. Princeton University*, Case No. 18-16539, 2019 WL 161513, at *6-7 (D.N.J. Jan. 9, 2019). The Court need not grapple with *Baum*, which might otherwise be persuasive given Doe's discipline turned on the credibility of Doe and Jane Roe 1 and 2, and Doe was not afforded a chance to cross-examine either woman, because Doe has failed to establish the allegedly erroneous outcome of his discipline was motivated by gender bias.

Here, Doe has not alleged any facts similar to those presented by the plaintiffs in *Yusuf* and *Trustees of the University of Pennsylvania*, from which the Court might infer gender played a role in his discipline. Although there is no one way to prove an erroneous outcome claim, Doe has identified no statements by Kane, members of his Sanctions or Appeals Boards, or any other member of University leadership, that might create the basis for the Court to infer gender bias. Nor has Doe identified any training materials in use by the University that encourage its employees to believe accusers and presume the guilt of the accused, or any specific examples of external pressure on the University that might suggest Doe's discipline was linked to the University's perceived failure to adequately address sexual assault on campus. Instead, Doe relies on generalized claims about the structure of the University's investigations process, Mot. for TRO & Prelim. Inj. 13; Kane's decision to credit certain witness statements and ignore others, Doe's Proposed Findings of Fact & Conclusions of Law ¶¶ 137-142; and Kane's purported failure to investigate certain facts brought to her attention by Doe, *id.* ¶¶ 100-05, 129-32, without explaining how these flaws, and the resultant adverse outcome, were motivated by gender bias. As a result, he has not shown likely success on the merits. *See Yusuf*, 35 F.3d at 715 ("The fatal gap is . . . the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias.").

Doe also advances a selective enforcement theory of Title IX liability, under which a student can establish a violation by showing, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.* To succeed on such a claim, "a male plaintiff must allege a female was in circumstances sufficiently similar to his own and was treated more favorably by the university." *Saravanan v. Drexel Univ.*, No. 17-3409, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017)

(citation and internal quotation marks omitted). A valid comparator student "must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it." *Id.* (quoting *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at *19 (E.D. Pa. Sept. 4, 2015)). The plaintiff must establish the selective enforcement was motivated by gender. *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 466225, at *9 (D.N.J. Jan. 17, 2018).

At oral argument, Doe stated his claim of selective enforcement was predicated on unpunished breaches of confidentiality by his accusers, who were alleged to have discussed the investigation with various sorority sisters and in a social media post sometime after Doe's expulsion became final. The Court finds neither of these allegations is sufficient to establish likely success on the merits for two reasons. First, Doe has not identified a valid comparator, i.e., a woman found to have violated the University's Sexual Misconduct Policy. And second, even if the Court could compare an impermissible disclosure and non-consensual sexual contact, which it cannot, Doe has offered no evidence to suggest the University's decision to punish him and not the alleged leakers was motivated by his gender. As a result, Doe has failed to establish a likely success on the merits of his selective enforcement Title IX claim. *Saravanan*, 2017 WL 5659821, at *6; *Rider*, 2018 WL 466225, at *9.

Because Doe has failed to establish a likelihood of success on the merits of his Title IX claims under either an erroneous outcome or a selective enforcement theory, the Court finds he is not entitled to preliminary injunctive relief on the basis of his Title IX claim.

The Court next considers whether Doe has established likely success on the merits of his breach of contract claim. Under Pennsylvania law, a breach of contract claim requires the plaintiff to establish three elements: "'(1) the existence of a contract, including its essential

terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). To satisfy this second element, the alleged breach must be material, and not immaterial or "simple." *Am. Diabetes Ass'n v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 867 (E.D. Pa. 2016) (noting, under Pennsylvania law, "if a breach [of contract] is an immaterial or simple failure of performance, and the contract was substantially performed, the contract remains effective"). Pennsylvania law permits a student to bring a suit for breach of contract where "the institution ignores or violates portions of the written contract." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999) (citations omitted). "The contract between an educational institution and a student includes any agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook." *Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 810 (quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007)).

Two University policies form the basis of Doe's claim: the University's Sexual Misconduct Policy (the Policy) and its Student Handbook (the Handbook). *See* Mot. for TRO & Prelim. Inj. Exs. B (the Policy) and C (the Handbook). Doe's written submission claims the University breached a provision of the Handbook which states:

> **Procedures and rights in student conduct procedures are conducted with fairness to all**, but do not include all of the same protections afforded by the courts. Due process, as defined within these procedures, **assures written notice and the opportunity for a hearing with an objective decision-maker.** No student will be found in violation of a University policy without information showing that it is more likely than not that, a policy violation occurred.

Mot. for TRO & Prelim. Inj. Ex. C at 1 (emphasis added). During his presentation at the January 29, 2019, hearing, Doe also suggested the University breached various aspects of the Policy, which is incorporated by reference into the Handbook. *See* Doe Hr'g Ex. 4, at 40. Doe argues he

12

will likely succeed on the merits of his claim based on several of the University's purported breaches of the Handbook and the Policy, including its failure to: (1) provide adequate notice to Doe; (2) conduct a full and fair investigation of the claims against Doe; (3) provide Doe with adequate access to the evidence against him; (4) apply the appropriate standard of review; and (5) provide him "fundamental fairness" in his disciplinary process. Mot. for TRO & Prelim. Inj. 10-12.[7] Because the Court finds Doe has not established likely success on the merits of any of these theories, it will deny his request for injunctive relief in connection with the breach of contract claim.

First, Doe argues he will likely succeed on his claim the University breached its contractual obligation to provide him with adequate notice of his accusers' complaints as required by Section 2.10.1 of the Policy, which states in pertinent part: "The Title IX Coordinator will meet with the [accused] in order to **provide written notification of the allegations**.[8] Mot. for TRO & Prelim. Inj. Ex. B § 2.10.1 (emphasis added). Doe argues that the University violated this provision of the Policy by failing to provide him with the substance of Jane Roe 1 and 2's complaints. Doe has not shown a likelihood of success on the merits of this theory. As Doe acknowledged during his testimony before this Court, he met with the Title IX coordinator on August 30, 2018. At this meeting, Doe was provided with a "Notice of Sexual

---

[7] Doe also contends the University violated the duty of good faith and fair dealing implied under the Handbook and the Policy. However, under Pennsylvania law, this duty is an "interpretative tool" used in conjunction with the substantive provisions of the agreement, and not an independent contractual obligation. *Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 815 n.8. Accordingly, the Court will not address the duty separately from the substantive provisions of the Handbook and the Policy at issue here.

[8] In its entirety, Section 2.10.1 of the Policy states: "The Title IX Coordinator will meet with the [accused] in order to **provide written notification of the allegations**, provide the respondent with a copy of the policy and its procedures, inform the respondent of his/her rights under this policy and answer any questions regarding the Policy, process and procedures." Mot. for TRO & Prelim. Inj. Ex. B § 2.10.1 (emphasis added).

Misconduct Investigation." Mot. for TRO & Prelim. Inj. Ex. A. As he also acknowledged at the hearing, based on the Notice of Sexual Misconduct Investigation, he understood: (1) Jane Roe 1 and Jane Roe 2 were his accusers, (2) the dates and locations of the purported assaults, (3) Jane Roe 1 and Jane Roe 2's allegations were of a sexual nature; and (4) the specific portion of the Policy he allegedly violated. *See* Hr'g Tr. 69:5-70:7, Jan. 28, 2019. Although the University *could have*, at least theoretically, supplied Doe with notes or transcripts of the statements Roe 1 and Roe 2 provided in their initial complaints as Doe suggests, Doe has identified no provision in either the Handbook or Policy *obligating* the University to do so. As a result, the Court finds Doe has failed to establish a likelihood of success in showing the University violated the Policy or Handbook by failing to provide him with adequate written notice of the allegations against him. *See Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 816 (granting a motion to dismiss a breach of contract claim where the notice procedures "did not require [the university] to provide a copy of the complaint to [the accused], nor did they require [the university] to provide [the accused] with the level of factual detail that the [accused] alleges was lacking").

Second, Doe argues he will likely succeed on the merits of his breach of contract claim based on the University's failure to conduct a "full and fair" investigation. Mot. for TRO & Prelim. Inj. 10. More specifically, Doe challenges the investigator's purported failure to "conduct follow-up interviews or gather physical evidence," or "determine what, if any, benefits or accommodations Jane 1 and Jane 2 received as a result of their claim to be a victim of sexual assault." Mot. for TRO & Prelim. Inj. 10-11. Doe's argument implicates sections 2.10.2 (requiring the investigator to "make findings of fact"), 2.10.4 (requiring the investigator to "request individual interviews with the complainant, the respondent and other witnesses as appropriate"), 2.10.5 (describing the purpose of the interviews), 2.10.7 (requiring the investigator

14

to interview witnesses provided by both the accuser and accused), and 2.10.8 (permitting the investigator to conduct follow-up interviews prior to concluding the investigation), of the Policy. Mot. for TRO & Prelim. Inj. Ex. B §§ 2.10.2, 2.10.4-5, 2.10.7-8.

The Court is not persuaded Doe will likely succeed on the merits of this theory of contract liability. The evidence produced at the hearing, including a copy of Kane's final report (without attachments), shows the investigator interviewed Doe twice, Jane Roe 1 twice, and Jane Roe 2 twice; considered multiple statements from Doe, Roe 1, and Roe 2; and interviewed ten separate witnesses, including several identified by Doe. *See* Report of Investigation 3-4. Although the Court makes no judgment as to whether this investigation was sufficient for the University to satisfy its obligations under the Policy, the Court is nevertheless unpersuaded, on this record, Doe will likely be able to carry his burden of establishing a material breach of the agreement, given the undisputed breadth of Kane's investigation. As a result, the Court finds Doe has not established likely success on the merits of this theory of breach of contract liability.

Third, Doe argues he will likely succeed on the merits of his breach of contract claim based on the University's purported failure to provide him with the precise evidence against him. The factual basis for this claim is that, on at least one occasion when Doe reviewed the report, pages were missing. Mot. for TRO & Prelim. Inj. 11. Doe does not explicitly identify a specific Policy or Handbook provision the alleged failure to provide the complete report may have contravened. However, Doe's argument might be read to reference Policy Section 2.10.9, which permits the accused to review the preliminary report before it is final and provide a written response for the investigator's consideration.[9] Again, the Court finds Doe has failed to establish

---

[9] Section 2.10.9 states: "Within one week after each party reviews the preliminary factual findings, the complainant and respondent may submit a written response to the investigator who

likely success on this theory. At the hearing, Doe testified, when he saw the missing page, he "mentioned [a page was missing] to the Title IX coordinator right away. And she emailed the Investigator. And we received that page, I think -- if I were to make an estimate -- I think, like, 10, 15 minutes later." Hr'g Tr. 44:15-19, Jan. 28, 2019. Based on the University's prompt response to his request for the missing page, the Court is not persuaded Doe will be able to succeed in showing that failing to provide the missing page for 10 or 15 minutes was a material violation of the Policy. As a result, the Court finds Doe has not established likely success on the merits of this breach of contract theory of liability.

Fourth, Doe claims the University violated both the Handbook and the Policy by failing to apply the preponderance of the evidence standard, as required by Policy Section 2.10.2 and Handbook page 49.[10] In support of this argument, Doe complains he was found responsible for violating the Policy despite the absence of any physical evidence or third-party witnesses corroborating his accusers' allegations. Mot. for TRO & Prelim. Inj. 11. The Court does not find Doe is likely to prevail on the merits of this aspect of his claim. Although Doe was entitled by the Policy and Handbook to a preponderance standard, Doe has cited no portion of either document requiring the investigator to obtain physical evidence or eyewitness corroboration before making a finding of responsibility. Moreover, Doe has failed to establish any facts showing, or that would permit the Court to infer, Kane did not believe Doe was more likely than not responsible for violating the Policy. *See Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 818-19.

---

will consider that response before finalizing the factual findings." Mot. for TRO & Prelim. Inj. Ex. B § 2.10.9.

[10] Policy Section 2.10.2 states: "The Title IX Coordinator will assign an investigator to the complaint. The investigator will make findings of fact, applying a preponderance of the evidence standard (i.e., more likely than not), and determined based on those findings whether a violation occurred." Mot. for TRO & Prelim. Inj. Ex. B § 2.10.2. Handbook Page 49 states, in pertinent part, "No student will be found in violation of a University policy without information showing that it is more likely than not a policy violation occurred." *Id.* Ex. C, at 49.

As a result, the Court finds Doe has not established a likely success on the merits of this theory of contract liability.

Finally, Doe broadly claims the disciplinary proceedings against him violated the University's guarantee of "fundamental fairness" in the disciplinary process. *See* Mot. for TRO & Prelim. Inj. 11 ("[The] conduct of the entire process treated John as if he was guilty from the start, thereby tainting the investigative process and violating the guarantees of fundamental fairness and fair and impartial hearing."). Doe does not identify specific, relevant provisions of the Handbook or Policy, but the Court presumes he refers to Page 49 of the Handbook, which recognizes that "[d]ue process, as defined within these procedures, assures written notice and the opportunity for a hearing before an objective decision-maker," and Page 37, which describes the University's "commitment" to "engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable." Mot. for TRO & Prelim. Inj. Ex. C.

Under Pennsylvania law, "fundamental fairness" in the context of student disciplinary proceedings requires a student be given "notice of the charges and some opportunity for a hearing." *Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 812 (quoting *Ruane v. Shippensburg Univ.*, 871 A.2d 859, 862 (Pa. Commw. Ct. 2005)).[11] More specifically, Pennsylvania courts have found a student is entitled to a "statement of the specific charges and grounds which...would justify [discipline]," and should be provided "the names of the witnesses against him," "an oral or written report on the facts to which each witness testifies," and an "opportunity to present . . . his own defense against the charges and to produce either oral testimony or written affidavits of

---

[11] Students attending private universities, such as the University of the Sciences, are not ordinarily entitled to the same due process right to fairness as students at public institutions. *Trs. of the Univ. of Pa.*, 270 F. Supp. 3d at 812 n.6 (citing *Reardon*, 926 A.2d at 480 n.2). However, the Court finds that the University voluntarily contracted to provide "fundamental fairness" based on pages 49 and 37 of the Handbook. *Id.*

witnesses on his behalf." *Id.* (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 578-79 (Pa. Super. Ct. 1990)). Nevertheless, an educational institution need not provide "a full-dress judicial hearing, with the right to cross-examine witnesses." *Boehm*, 573 A.2d at 579.

The Court finds Doe has failed to establish likely success on the merits of his claim the University violated its promise to provide a "fair" disciplinary proceeding. The record reflects Doe was provided with (1) notice of the specific charges against him, Mot. for TRO & Prelim. Inj. Ex. A at 1; (2) a factual basis for those charges (including the time, date, sexual nature, and locations of the alleged incidents, and the identities of his accusers) during the Notice of Investigation Meeting, in the Notice of Investigation itself, and after reviewing the preliminary and final reports of investigation, *id.*; *see also* Hr'g Tr. 44:2-8, 44:20-45:7, 48:2-3, Jan. 28, 2019; (3) written reports of the witnesses' statements (which were attached to the preliminary and final reports of investigation, but not produced at the hearings before this Court), Hr'g Tr. 74:9-20, Jan. 28, 2019; (4) several opportunities to defend himself (both before the investigator and the Sanction and Appeal Boards) of which he availed himself, *id.* 54:3-12, 80:8-11; 83:24-84:3; and, (5) the opportunity to suggest witnesses in his defense, all but one of whom were actually interviewed by the investigator, *id.* 73:5-20. Although the Court reserves judgment on the ultimate merits of Doe's claim, it finds, on the basis of the evidentiary record before it, Doe has failed to establish a likelihood of success on his claim for a violation of "fundamental fairness" as this term is defined under Pennsylvania law and the Handbook. As a result, he is not entitled to an injunction on this basis.

In sum, Doe has failed to establish likely success on the merits of any of his breach of contract theories. Thus, he is not entitled to injunctive relief on this claim.

**CONCLUSION**

For the reasons discussed above, the Court finds Doe has failed to establish likely success on the merits of his claims for breach of Title IX and breach of contract. As a result, the Court finds Doe is not entitled to a preliminary injunction, and the University's request for the Court to fix a bond securing the injunction is dismissed as moot.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.