## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :      **Civil Action No.: 19-cv-358- JS** |
| | : |
| UNIVERSITY OF THE SCIENCES | :      **JURY TRIAL DEMADED** |
| | : |
| Defendant. | : |
| | : |

## ORDER

AND NOW, on this _____ day of _____ 2019, upon consideration of Defendant's

Motion to Dismiss the Complaint, Plaintiff's Opposition thereto, and for good cause shown, it is

ORDERED and DECREED that Defendant's Motion is **DENIED**.


**IT IS SO ORDERED.**

_____
U.S. DISTRICT COURT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Civil Action No.: 19-cv-358- JS** |
| | : | |
| UNIVERSITY OF THE SCIENCES | : | **JURY TRIAL DEMADED** |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff John Doe ("John"), by his undersigned attorneys, hereby files this Opposition to Defendant's Motion to Dismiss the Complaint.  For the reasons stated below, Defendant's motion should be denied.

## I.   ARGUMENT

### A.   Legal Standard

### B.   USciences Expelled John Doe Because of His Sex

Title IX holds that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal assistance."  20 U.S.C. § 1681(a). The Third Circuit has not set forth a standard for determining when intentional discrimination has occurred in cases where a student is relying on Title IX to challenge either the initiation or the outcome of a disciplinary proceeding.  However, the Second Circuit recently set the standard for judging the sufficiency of a complaint alleging discrimination under Title IX by adopting the *McDonald-Douglas* burden-shifting standard applied in Title VII cases.  *See Doe v. Columbia Univ.*, 831 F.3d 46, 53-56 (2d Cir 2016).  The Court in *Columbia* explained:

> [A] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination.

*Id*. at 56 (emphasis added).  *See also*, *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 ("[C]ourts have interpreted Title IX by looking to . . . the caselaw interpreting Title VII.")  The Second Circuit provided further guidance by stating, "*McDonald-Douglas's* temporary presumption in a plaintiff's favor reduces the plaintiff's pleading burden, so that the alleged facts need support only a minimal inference of bias." *Id.*  Thus, the Second Circuit has established that in Title IX cases, "the plaintiff needs to present only minimal evidence supporting an inference of discrimination in order to prevail."

Moreover, other Courts have established a framework for asserting gender bias claims in college university disciplinary proceedings.  For example, in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), the Second Circuit examined two categories of cases that assert gender bias in university disciplinary proceedings:  "In the first category, 'erroneous outcome' cases, 'the claim is that the plaintiff was innocent and wrongly found to have committed an offense.'  In the second, 'selective enforcement' cases, the 'claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender.'"  *Prasad v. Cornell University*, No. 5:15-cv-322, 2016 WL 3212079, at *13 (N.D.N.Y. Feb. 24, 2016) (*quoting Yusuf*, 35 F.3d at 715).

Additionally, Courts have recognized deliberate indifference claims under Title IX in the university disciplinary setting.  *See, e.g.*, *Doe v. Univ. Of St. Thomas*, 240 F. Supp. 3d, 984, 990 (D. Minn. 2017); *Wells v. Xavier University*, 7 F. Supp. 3d 746, 751-52 (S.D. Ohio Mar. 2014). Here, John Doe has adequately pled all three categories of discrimination.

2

1. *Erroneous Outcome*

The burden on a plaintiff for pleading an erroneous outcome is not heavy:

> For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge.  A complaint may also allege particular procedural flaws affecting the proof.

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  Additionally, a plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  *Id*.  The Amended Complaint asserts that several procedural flaws affected the proof supposedly relied upon to expel John Doe.  Specifically, the Amended Complaint alleged that USciences' Sexual Misconduct Policy was fundamentally flawed (Am. Comp. ¶ 21) through its use of a single-investigator model (Am. Comp. ¶¶ 59, 95, 96), by carving out special rules and procedures for claims of sexual misconduct (Am. Comp. ¶ 49), by denying the accused the ability to confront and cross-examine his accuser (Am. Comp. ¶ 49),[1] by using an inadequate appeal process (Am. Comp. ¶ 96) and by continuing to use policies that have been rescinded and/or called into question by the Department of Education ((Am. Comp. ¶¶ 9-21).  Furthermore, the Amended Complaint alleges that that the outcome was erroneous.  (Am. Comp. ¶ 73.)

Additionally, the Amended Complaint alleges that gender bias was a motivating factor behind the erroneous finding.  Similar to the Compliant in *Doe v. Columbia*, the Amended Complaint here spotlights the substantial criticism universities have faced over not taking seriously complaints of female students alleging sexual assault by male students.  (Am. Comp. ¶ 93.)  John Doe points out the added pressure and encouragement USciences received from

---

[1] As the Sixth Circuit points out in *Doe v. Baum*, 903 F.3d 575, 587-6 (6th Cir. 2018), pleading a

federal officials to institute solutions to sexual violence against women and discriminate against men. (Am. Comp. ¶¶ 13, 95.)

Defendant is wrong in its assertion that John Doe's allegations amount to nothing more than "pro-victim sentiment." (Doc No. 23 at 10.) Here, John Doe has made specific allegations of pressure from federal officials and the school's need to show its student body and the pubic that the University is serious about protecting female students from sexual assault by male students. (Am. Comp. ¶¶ 94-95.) Such inferences are not unreasonable. *See Doe v. Columbia*, 831 F.3d at 57 (*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible.). As such, Plaintiff has adequately pled an erroneous outcome Title IX cause of action.

2. *Selective Enforcement*

John Doe has also adequately plead a Title IX violation under the selective enforcement theory by alleging that "the severity of the penalty and/or the decision to initiate the disciplinary proceeding was affected by [his] gender." *Yusuf*, 35 F.3d at 715. In its motion to dismiss, Defendant completely ignores John Doe's allegations that he and Jane Roe 2 were identically situated in that they had both were drinking, and therefore subject to violations of the Sexual Misconduct Policy, yet only John Doe was identified as the initiator of sexual activity. (Am. Comp. ¶¶ 98-99.) In so doing, Defendant closed the door on the possibility of charging Jane Roe 2 with non-consensual sexual contact. As such, only John Doe was charged with violating the Sexual Misconduct Policy and only John Doe was penalized.

### 3.  *Deliberate Indifference*

Defendant erroneously argues that John Doe cannot assert a claim of deliberate indifference because such claims are typically reserved for allegations of sexual harassment only. (Doc No. 23 at 7 n5.)  To the contrary, courts have recognized deliberate indifference claims asserted by plaintiffs who claim they were unfairly expelled based on false claims of sexual assault.  *See, e.g.*, *Wells v. Xavier University*, 7 F. Supp. 3d 746 (S.D. Ohio 2014).  *See also*, *Mallory v. Ohio University,* 76 Fed. Appx. 634 (6th Cir. 2003) (assuming without deciding that such a claim was appropriate to challenge a disciplinary hearing).  To demonstrate a deliberate indifference claim, a plaintiff "must *ultimately* show that an official of the institution who had the authority to institute corrective measures had actual notice of and failed to correct the misconduct. . . ."  *Wells*, 1 F. Supp. 3d at 751 (emphasis added).  Although, admittedly, John Doe cannot at this state point to the specific official with the authority to institute corrective measures, he does allege that the University officials and administrators had notice of and failed to correct the misconduct.  (Am. Comp. ¶¶ 78, 100-102.)  Such allegations are not conclusory, but instead are supported by allegations of specific acts of gender-based discrimination that was known and caused by the University (Am. Comp. ¶¶ 21, 49, 55, 57-58, 63, 65, 78, 80, 97-99.)

For the reasons stated above, John Doe has stated a claim for intentional discrimination under Title IX under various theories of liability.  As such, Defendant's motion to dismiss this claim should be denied.

C.  **State Law Claims**[2]

> 1.  *This Court Has Jurisdiction Over the State Law Claims*

Defendant correctly asserts diversity is determined at the time that the action is filed, and on the basis of the residency of the parties at that time.  This determination is a question of law and cannot be determined simply by what is pled at the time an action is filed.  John Doe originally pled Pennsylvania residency in his original Complaint.  John Doe is in fact a resident of North Carolina, and was a resident of North Carolina when the original complaint was filed. Stating that he was a resident of Pennsylvania was an error and the admitted error was corrected in the Amended Complaint.

> 2.  *John Doe Has Adequately Pled A Claim For Negligent Infliction Of Emotional Distress*

In order raise a claim for negligent infliction of emotional distress, NIED, a plaintiff must demonstrate one of four factual scenarios: (1) the defendant owed a fiduciary duty toward the plaintiff; (2) the plaintiff suffered a physical injury that caused emotional distress; (3) the plaintiff was in the "zone of danger" of the defendant's tortious conduct; or (4) the plaintiff witnessed a serious injury to a close family member." *Doe v. Phila. Cmty. Health Alt. AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000). The University moves to dismiss the NIED claim against it because the University contends that no fiduciary duty or special relationship exists between John and USciences in this case, however the University does indeed have a fiduciary duty to John.

In Pennsylvania, a fiduciary duty arises out of a confidential relationship where "the parties do not deal on equal terms, but, on the one side there is overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Frowen v. Blank,* 425 A.2d 412,

---

[2] John Doe has withdraws his Negligence claim.

416-17 (Pa. 1981). "The essence of such a [confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *In re Estate of Scott,* 316 A.2d 883, 885 (Pa. 1974); *Basile v. HR Block,* 777 A.2d 95, 101 (Pa.Super.Ct. 2001) (citing *Estate of Scott*). *Manning v. Temple University*, Civil Action No. 03-4012, at *20-21 (E.D. Pa. Dec. 30, 2004).

Here, John and the University are not parties dealing on equal terms during the disciplinary process (Am. Com. ¶¶ 125-129). The University possesses and exercises an overmastering influence over the execution of the University's disciplinary policies and procedures, including the Student Handbook and the Sexual Misconduct Policy. The University's disciplinary policies and procedures are not a product of negotiation, but ones of adhesion, unilaterally drafted and imposed upon its student body by the University and provided to University students after acceptance by the University. Thus, the University creates, interprets and implements its disciplinary policies unilaterally, exercising complete control over process which, if mishandled, would inevitably cause deep emotional harm so devastating that a reasonable person could not be expected to bear it. Students' futures are at the mercy of the University executing fair policies and procedures. Irreparable harm to students can be done if the University mishandles these sensitive matters. Accordingly, throughout the course of its investigation, the University had a special relationship with John, which imposed on it a duty of care for John's emotional well being, particularly throughout a disciplinary process.

The University implicitly acknowledges the extreme emotional vulnerability of students involved in its disciplinary process by repeatedly and formally offering to afford those students, claimants and respondents, psychological and emotional care and support throughout the process (Am. Com. ¶¶ 128). Yet, as the facts of this case illustrate, the University did mishandle its

disciplinary procedures against John and that negligence has caused deep emotional harm to John by compromising his future, a consequence so devastating that a reasonable person could not be expected to bear it. Accordingly, John's Complaint and its allegations meet the pleading requirement.

3.   *John Doe Has Properly Plead An Intentional Infliction Of Emotional Distress Claim*

Although the Pennsylvania Supreme Court has not expressly adopted the tort of intentional infliction of emotional distress, IIED, as defined in the Second Restatement on Torts, "the third circuit has confronted this question ... and has repeatedly held that Pennsylvania does recognize the tort, in spite of 'speculation' to the contrary." *Weinstein v. Bullick*, 827 F.Supp. 1193, 1203 (E.D. Pa.1993) (citing *Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir.1990). To sustain an IIED claim, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe. *Bruffett v. Warner Commc'ns, Inc.,* 692 F.2d 910, 914 (3d Cir. 1982). The University moves to dismiss the IIED claim against it because the University contends that the alleged conduct of the University was not outrageous as a matter of law. The plaintiff has satisfied the threshold evidentiary requirement of showing extreme or outrageous behavior.

The Pennsylvania courts look to the Restatement (Second) of Torts for guidance as to the "outrageous conduct" element of the tort of intentional infliction of emotional distress. *Bougher v. University of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989); see *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 190, 527 A.2d 988, 991 (1987). Section 46(1) of the Restatement provides, as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The tort of intentional infliction of severe emotional distress requires therefore that the alleged conduct be so extreme and outrageous as to cause plaintiff emotional distress. *Bougher v. University of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989); see *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (in banc). The court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct. *Id.*

Restatement (Second) of Torts § 46, comment h, reads in full:

> h. *Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Here, the defendants conduct may be reasonably be regarded as so extreme and outrageous as to permit recovery. John alleges in his complaint that the University's investigators systematic improper acts and omissions caused him severe emotional distress, physical pain and agony which include symptoms of depression, extreme anxiety, loss of the ability to concentrate, intense feelings of hopelessness and sadness, physical pain, and the inability to sleep through the night. Specifically, John alleges among other things that the University permitted and even encouraged to reveal the confidential nature of the complaints against John in order to gather information about John's character, disregarded witnesses and statements beneficial to him, and failed to examine the complainants about discrepancies in their versions of events to intentional skew evidence to ensure that John would be found to have sexually assaulted the complainants

(Am. Com. ¶¶ 63-65). John Doe is seeking medical treatment for the emotional trauma of being railroaded. The University's conduct and that of its investigators was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community

### 4. *John Doe Has Properly Pled A Breach of Contract*

The "relationship between a private educational institution and an enrolled student is contractual in nature." *Powell v. Saint Joseph's Univ.*, Civil Action No. 17-4438, at *8 (E.D. Pa. Feb. 16, 2018), citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999); accord *Barker v. Bryn Mawr Coll.*, 122 A. 220, 221 (Pa. 1923). The contract between a student and a university is not necessarily a single document, but "is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Swartley*, 734 A.2d at 919. Courts review the agreement between a student and a private university "as [they] would any other agreement between two private parties." *Reardon v. Allegheny Coll.,* 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (Pa. 2001). Consequently, a breach of contract claim against a private university "must relate to a specific and identifiable promise that the school failed to honor." *Powell v. Saint Joseph's Univ.*, Civil Action No. 17-4438, at *8 (E.D. Pa. Feb. 16, 2018) citing *Vurimindi v. Fuqua Sch. of Bus.,* 435 F. App'x 129, 133 (3d Cir. 2011). Here, the University contends that John has failed to identify any contract provision that was alleged breached. On the contrary, John has identified numerous specific promises that the University has failed to honor.

The Student Handbook is one of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment at the University. The Student Handbook contains the University Policies governing its relationship

with its enrolled students.  Plaintiff's complaint specifically cites to pages 37 and 49 of the Handbook as provisions that were specifically violated by Defendant.  (Am. Com. ¶¶ 109-111.)[3]

The contract between John and the University, as set forth in the Student Handbook, contains the following guarantee of essential fairness: "Procedures and rights in student conduct procedures are conducted with fairness to all."  (Am. Com. ¶ 109.)  The contract between John and the University, as set forth in the Student Handbook, also contains the following guarantee of essential due process: "Due process, as defined within these procedures, assures written notice and the opportunity for a hearing before an objective decision-maker." (Am. Com. ¶ 110.)   The contract between John and the University, as set forth in the Student Handbook, also states the University is committed to "[e]ngaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable."  (Am. Com. ¶ 111.)  Defendant argues that John Doe's Breach of Contract claim should failed by looking at certain allegations involving notice, the single-investigator model, and a full and fair investigation to determine if a breach of contract has been stated as to each separate allegation.  While John Doe explains below how the pleading requirements are in fact met for each below, it should be noted that all of the allegations taken together can and should be evaluated when determining if a contract to provide

---

[3] Defendant falsely asserts that the Sexual Misconduct Policy is separate from the Student Handbook and thus constitutes another (and only) contract that applies.  To the contrary, the Sexual Misconduct Policy, which is attached to the Amended Complaint as Exhibit A, is a subsection of the Student Handbook, which is attached to the Amended Complaint as Exhibit B. Exhibit B of the Amended Complaint contains only certain portions of the 212 page Student Handbook.  Page 2 of Exhibit B, the Table of Contents, shows that the University's Policies begin on page 8 and continue to at least page 71.  The Sexual Misconduct Policy begins on page 36 and ends on page 40 and includes a hyperlink to the complete Sexual Misconduct Policy on page 40.  The complete policy was retrieved through this hyperlink and attached to the Amended Complaint as Exhibit A.  For the Court's convenience, pages 36-40 are attached hereto as Exhibit C.

fairness, due process, and to engage in adequate, reliable, impartial, prompt, fair and equitable inquires and resolutions has been violated.

### *Notice*

John Doe alleges that sufficient notice was not provided to him to allow him to adequately defend himself.  (Am. Com. ¶ 116(1).)   Specifically, the Amended Complaint alleges that he was not provided with any specifics about the allegations against him despite the policy that the University retrieve detailed information from the accuser and provide it to the accused.  (Am. Com. ¶ 50; Exh A at 2.9.2 and 2.10.1.)   Failing to provide information about the charges against him that is in the University's possession and is required to be provided to the accused is arguably a violation of contractual duties to provide fairness and due process.

### *Single-Investigator Model*

The Amended Complaint points out Defendant's procedural flaws at it relates to the decision to use a single-investigator model.  (Am. Com. ¶¶ 20, 56-58, 116(5).)  The Amended Complaint also alleges that using this model under the Sexual Misconduct Policy denied John Doe access to the protections and procedures afforded to students accused of other serious violations.  Namely, John Doe was denied the ability to have his charges adjudicated by a panel of individuals and he was denied the ability to confront and cross-examine his accuser.  (Am. Com. ¶ 49.)  Denying an accused student the ability to cross-examine witnesses against him alone raises questions of fairness and due process.  In *Doe v. Baum*, 903 F.3d 575, 587-6 (6th Cir. 2018), the Sixth Circuit held that pleading a denial of the opportunity for cross-examination when credibility is at stake is "sufficient to cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome."  As such, John Doe has adequately pled a breach of contract as it relates to the single-investigator model.

***Full and Fair Investigation***

Amazingly, Defendant asserts that John Doe criticized the investigation in "conclusory fashion." (Doc No. 23 at 20.) To the contrary, the Amended Complaint sets for specific examples of how the investigation was incomplete and unfair. John Doe alleged that the investigator failed to adequately challenge the accusers and their witnesses, (Am. Com. ¶ 63(d) and (f)0; treated those same witnesses more favorably than him and his witnesses (Am. Com. ¶¶ 63(b), (c), (e), (g), 116(2)); and analyzed evidence to John Doe's detriment (Am. Com. ¶ 65). The Amended Complaint also alleges that the University limited John Doe's access to the evidence against him (Am. Com. ¶116(3)); found him responsible without sufficient evidence (Am. Com. ¶¶ 116(4)); and subjected him to an unfair and partial hearing (Am. Com. ¶ 116(5)). These allegations clearly amount to violations of the contract for fairness and due process.

## II.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

Date: May 14, 2019          By:          /s/ Riley H. Ross III
                                              Riley H. Ross III, PA I.D. #204676
                                              Zainab K. Ali, PA I.D. #321181
                                              Two Penn Center
                                              1500 JFK Blvd. Suite 1525
                                              Philadelphia, PA 19102
                                              (215) 587-0006
                                              riley@minceyfitzross.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Riley H. Ross III, hereby certify that I caused a true copy of the foregoing Opposition

to served upon the University of the Sciences through its attorney Leslie Greenspan by filing the

document via ECF on May 14, 2019.


<u>/s/ Riley H. Ross III          </u>
Riley H. Ross III