## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | Case Number: 2:19-cv-00358 |
| Plaintiff-, | Judge: SANCHEZ |
| v. | MOTION FOR PARTIAL SUMMARY JUDGMENT |
| UNIVERSITY OF THE SCIENCES. | |
| Defendants-Appellees | |

Pursuant to Fed. R. Civ. P. 56, Plaintiff John Doe respectfully submits this Motion for a Partial Summary Judgment.

Plaintiff seeks judgment has to liability on the breach of Contract Claim in Count II of the Amended Complaint. The Court should issue permanent injunctive relief vacating of the adverse finding, expunging Plaintiff's record, and prohibiting the school from reporting or disseminating information about the matter to any third-party inquiring about Doe. This matter should then be set for trial on the issue of damages, along with the trial on Plaintiff's remaining claims. *See* Proposed Order. This Motion is supported by the Affidavit of John Doe (Doc#58-1) and the other evidence in the record.

1

## FACTS

Plaintiff John Doe was a student at the University of the Sciences ("USciences" or the "University").

### A.      The Parties

USciences is a private higher educational institution founded in 1821.  The University is located in Philadelphia, Pennsylvania and has approximately 1200 undergraduate students. (Amended Complaint ¶4.)  The University receives federal funding.  (Amended Complaint ¶83.)

Doe is a North Carolina resident who was an undergraduate student at the University.  He paid his tuition, attended classes, and had a more than respectable 3.29 GPA.  Doe had completed 3½ semesters towards a degree in Biomedical Sciences before he was expelled.

### B.      The University's Disciplinary Process

The University adopted a Sexual Misconduct Policy (the "Policy"). (Sexual Misconduct Policy Definitions, Process and Procedures, Amended Complaint Ex. A.)  The Policy provides that a "person who wants to engage in a specific sexual activity is responsible for obtaining consent for that activity." (Amended Complaint Ex. A §2.1.1.)

The obligations of the University are triggered by a Report, which is defined as "notifying the Title IX Coordinator or other Responsible Employee of" possible misconduct.  (Amended Complaint Ex. A §2.3.1.)  Following a Report, the University's Title IX Coordinator is required to meet with the accused student in order to provide "written notification of the allegations," as well as information about the Policy.  (Amended Complaint Ex. A §2.10.1.)   The accused student may have an "advisor" present during all meetings, but the advisor may "not speak… at any meeting" or "direct questions to any administrator, party or witness in the process (Amended Complaint Ex. A §2.14.2.)

The Title IX Coordinator assigns an investigator; this investigator makes "findings of fact, applying a preponderance of the evidence standard (i.e., more likely than not), and determine[s] based

on those findings of fact whether a violation of this policy occurred. (Amended Complaint Ex. A §2.10.2.)  The investigator may conduct interviews of the alleged victim, the accused student, and "witnesses provided by both the complainant and respondent." (Amended Complaint Ex. A §§2.10.4-2.10.7.)  The purpose of the interviews is to "gather and assess information about the incident(s) at issue" and is "not to solicit general information about either party's character." (Amended Complaint Ex. A §2.10.5.)  The accused student is never given an opportunity to question his accuser.  Instead, a draft investigative report is provided to the parties.  The alleged victim and the accused student may review "preliminary factual findings" and "submit a written response to the investigator."

The Student Handbook (which sets forth the University's rules and is a contract, *see infra*.) guarantees certain rights to students accused of sexual misconduct.  The Student Handbook provides that the Policy "serves to demonstrate the University's commitment to… engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable." (Amended Complaint Ex. B at 37.)   The Handbook summarizes the University's obligations to provide a fair hearing process even if the formal rules of courts are not utilized:

> Students should be aware that the student conduct process is quite different from criminal and civil court proceedings. *Procedures and rights in student conduct procedures are conducted with fairness to all*, but do not include all of the same protections afforded by the courts. Due process, as defined within these procedures, assures written notice and the opportunity for a hearing before an objective decision-maker. No student will be found in violation of a University policy without information showing that it is more likely than not that, a policy violation occurred. Any sanctions will be proportionate to the severity of the violation and to the cumulative conduct history of the student.

(Amended Complaint Ex. B at 49 (emphasis supplied).)

If the investigator determines that a violation has occurred, sanctions are determined by a 3-person panel of faculty and staff.  (Amended Complaint Ex. A §2.11.2.)  An appeal is available, but is limited to certain situations, such as a "substantive violation of the procedures" which "is likely to have the effect of changing the outcome," new evidence, "the decision regarding responsibility was in

error," or "the sanctions are not commensurate with the violation." (Amended Complaint Ex. A §2.15.1.)

**C.     The Allegations Against Doe**

Doe had sexual encounters with two female students at the University, identified as Jane Roe 1 ("Roe 1") and Jane Roe 2 ("Roe 2").

In November, 2017, Doe and Roe 1 had an exchange on Snapchat, described as follows in the investigation:

> [Roe 1] and [Doe] had a snapchat exchange the evening of November 3, 2017, in which [Roe 1] complained about "guy issues." Respondent invited Complainant 1 to his house to talk.
>
> Both [Doe] and [Roe 1] understood that sex was a possibility if [Roe 1] accepted this invitation. [Doe] and [Roe 1] had known each other for over a year and had a casual, non-sexual friendship.

(Investigation at 5.)  Roe 1 then came over to Doe's residence where the two engaged in sexual activity, including oral sex and intercourse. (Amended Complaint ¶¶22-28.)  In the morning, the two again had sexual intercourse and Doe walked Roe 1 back to her residence.  The two continued to interact over the following days. (Amended Complaint ¶¶32-33.)  More than nine months later, in August 2017, Roe 1 reported to the University that Doe had engaged in sexual misconduct by engaging in sexual activity with her in the morning without her consent. (Amended Complaint ¶¶35-36.)

In late 2107 through early 2018, Doe and Roe 2 had an ongoing sexual relationship.  The relationship was a casual, "friends with benefits" type of relationship; the two would often arrange to meet for sex via text messages or after meeting at parties. (Amended Complaint ¶39.)  In January 2018, Roe 2 attended a party of Doe's residence.  Both Doe and Roe 2 consumed alcohol. (Amended Complaint ¶¶40, 42.)  Roe 2 agreed to spend the night in Doe's room and the two engaged in sexual activity. (Amended Complaint ¶¶41, 43-44.)  Roe 2 left approximately 2:00 am. (Amended Complaint ¶45.)

More than seven months later, in August 2018, Roe 1 and Roe 1's sorority sister encouraged Roe 2 (who was also a member of the same sorority) to file a report of sexual misconduct against Doe. (Amended Complaint ¶¶37, ¶47.)  The Amended Complaint alleges that, in order to do this, Roe 1 and Roe 1's sorority sister violated the confidentiality provisions of the Policy.  The Amended Complaint states:

> Despite policies and regulations prohibiting students from disclosing information about a report or a complaint of sexual misconduct, [Roe 1]… and others were permitted and encouraged by the University to disclose information about [Roe 1's] complain to others in an efforts to find other women willing to make a complaint against [Doe].

(Amended Complain ¶37. *Compare* Amended Complaint Ex. A §1.23.3(Policy provision prohibiting the disclosure on information).)

The University retained an attorney to conduct a single inquiry into both of the allegations against Doe.  (Amended Complaint ¶59.) Doe was provided with notice of an investigation, but was not provided details of the allegations against him.  (Amended Complaint ¶50.)  As a result, Doe was unprepared to answer some of the questions from the investigator due to the passage of time between the sexual encounters and the filing of the complaints.  (Amended Complaint ¶63(g.)

The investigator sought and received impermissible character evidence about Doe, declined to interview witnesses with information helpful to Doe, and disregarded witness statements that tended to exonerate Doe.  (Amended Complaint ¶¶63(a)-63(c).)  For example, the investigator considered character evidence from other female students that Doe "was pushy and would not take no for an answer," but did not consider other witnesses who stated that Doe "would never have sex with someone without their consent."  (Amended Complaint ¶65(b.)  The investigator also demonstrated bias against Doe.  The investigator refused to confront Roe 1 and Roe 2 about inconsistencies in their statements despite conducting multiple interviews with each alleged victim.  In contrast,  the investigator "always cross-examined [Doe] on any discrepancy in his version of events."

(Amended Complaint ¶¶63(e)-63(f).)   The investigator also disregarded the testimony of several witnesses who provided evidence contrary to the statements of Roe 1 and Roe 2.   (*See e.g.* Amended Complaint ¶¶63(c), 65(d).)

The investigation was completed on November 13, 2018.   (Amended Complaint ¶66.)   The investigator concluded that Doe had engaged in sexual misconduct with Roe 1 by engaging in sexual intercourse without affirmative consent.   (Amended Complaint ¶68.)   The investigator concluded that Doe had engaged in sexual misconduct with Roe 2 by engaging in sexual intercourse when Roe 2 was incapacitated due to alcohol consumption.   (Amended Complaint ¶69.)   Doe was subsequently expelled from the University. (Amended Complaint ¶75.)    His appeals were denied.   (Amended Complaint ¶78.)

This litigation shortly followed.

**B.**   **Procedural History**

On January 24, 2019, Doe filed a Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction. After a two-day hearing, the District Court denied the Motion for a Temporary Restraining Order and Preliminary Injunction.   (Feb. 14, 2019 Order (Doc#14).)   Doe filed an Amended Complaint on April 15, 2019.  The University filed a Motion to Dismiss.  (Doc#23)  The Court held oral argument on July 10, 2019.  (July 10, 2019 Hrg.)  On June 29, 2019, the District Court granted Defendant's Motion to Dismiss.  (Doc#37.)  The Third Circuit reversed and remanded the case for further proceedings.  *Doe v. Univ. of the Sciences*, 961 F.3d 203 (3d Cir. 2020)

## ARGUMENT

**A.**   **The Standard For Resolution Of This Motion**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and… the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable juror could return a verdict for the non-moving

party. *Varghese v. TJX Cos., Inc.*, E.D.Pa. No. 17-3866, 2019 U.S. Dist. LEXIS 38005, at *5 (Mar. 8, 2019), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party may move for summary judgment at any time until 30 days after the close of discovery, unless a different time is set by the court or local rule. Fed. R. Civ. P. 56(c).

**B.    Plaintiff Is Entitled To Partial Summary Judgment On His Breach Of Contract Claim**

**a.    Plaintiff And Defendant Had A Contract**

Under Pennsylvania law, a student and a private university have a contractual relationship. *Powell v. Saint Joseph's Univ.*, E.D.Pa. No. 17-4438, 2018 U.S. Dist. LEXIS 27145, at *10-11 (Feb. 16, 2018), *quoting Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). The contract between an educational institution and a student includes any "agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook." *Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 810 (E.D.Pa. 2017), quoting Reardon v. Allegheny Coll., 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (citation omitted).

**b.    The University Did Not Provide John Doe A "Hearing" As Required By Pennsylvania Law**

John Doe states in his Affidavit that he did not receive a hearing; there is no dispute of fact about this claim. He said:

> USciences, despite its contractual promises of "fair" and "equitable" treatment to those accused of sexual misconduct, did not provide me with a real, live, and adversarial hearing and the opportunity for me or my representative to cross-examine witnesses — including my accusers.

(Doe Aff. ¶4.)

**c.    The University Breached The Contractual Guarantee As Interpreted By The Third Circuit**

The University breached the contractual provisions requiring the University to provide a fundamentally fair system by failing to provide an adversarial hearing. The University's Student Handbook provides: "Procedures and rights in student conduct procedures are conducted with

fairness to all…" (Amended Complaint Ex. B. at 49.)  A policy statement attached to the Handbook, states that the University is committed to "engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable." (Amended Complaint Ex. B. at 37.)

According to the Third Circuit, the contractual promise by a school to provide "fundamental fairness" has a very specific meaning under Pennsylvania law.  Under Pennsylvania law "fundamental fairness" requires some form of a hearing, and the failure of the University to provide any such hearing is a violation of this contractual guarantee.  The decision of the Third Circuit on this in this case was clear and unambiguous:

> Pennsylvania courts have similarly determined that fairness includes the chance to cross-examine witnesses and the ability to participate in a live, adversarial hearing during which the accused may present evidence and a defense.

961 F.3d at 214.  The Third Circuit added:

> In short, notions of fairness in Pennsylvania law include providing the accused with a chance to test witness credibility through some form of cross-examination and a live, adversarial hearing during which he or she can put on a defense and challenge evidence against him or her.

961 F.3d 203 at 214.

The University breached its contractual obligation for fundamental fairness because it did not provide Doe with the opportunity for a hearing.  The Handbook, itself, suggests that fundamental fairness requires a hearing:  "Due process, as defined within these procedures, assures written notice *and the opportunity for a hearing before an objective decision-maker.*" (Amended Complaint Ex. B at 49.)  The Third Circuit's decision made clear that use of a single investigator by USciences was not a hearing and, thus, was a breach of both the "fundamental fairness" requirement in Pennsylvania law and the due process guarantee on page 49 of the Handbook.  The court said:

> We hold that USciences's contractual promises of "fair" and "equitable" treatment to those accused of sexual misconduct require at least a real, live, and adversarial hearing and the opportunity for the accused student or his or her representative to cross-examine witnesses—including his or her accusers.

961 F.3d at 215.  The court added:

> USciences did not provide Doe a real, live, and adversarial hearing. Nor did USciences
> permit Doe to cross-examine witnesses—including his accusers, Roe 1 and Roe 2. As
> we explained above, basic fairness in the context of sexual-assault investigations
> requires that students accused of sexual assault receive these procedural protections.

961 F.3d at 216. Thus, following the decision of the Third Circuit, Doe is entitled to Partial Summary

Judgment on his breach of contract claim that the single-investigator model used by USciences

violated the fairness that the University promises students accused of sexual misconduct.

**C.      Plaintiff Is Entitled To Permanent Injunctive Relief**

This Court has found that Pennsylvania law permits the entry of a permanent injunction to

prevent future harms from Defendant's breach of contract.

> Under Pennsylvania law, a plaintiff is entitled to a permanent injunction in order "'to
> prevent a legal wrong for which there is no adequate redress at law.'" *WellSpan Health
> v. Bayliss*, 2005 PA Super 76, 869 A.2d 990, 995 (Pa. Super. Ct. 2005) (*quoting Buffalo
> Twp. v. Jones*, 571 Pa. 637, 813 A.2d 659, 663 (Pa. 2002)). As such, a court may issue a
> permanent injunction to prevent an ongoing breach of contract that cannot be
> adequately compensated by monetary damages. *See id.* at 995-96.

*Dicicco v. Citizens Fin. Group, Inc.*, E.D.Pa. No. 15-267, 2015 U.S. Dist. LEXIS 120798, at *28 (Sep. 10,

2015).  *See also Devon Robotics v. DeViedma*, E.D.Pa. No. 09-3552, 2010 U.S. Dist. LEXIS 6219, at *6

(Jan. 25, 2010) (denying motion to dismiss claim for permanent injunctive relief arising from an alleged

breach of contract).

In this case, Plaintiff seeks an order vacating any disciplinary records and findings related to

the allegations of sexual misconduct described in the Amended Complaint.  Other federal courts, in

considering similar claims by students accused of misconduct, have granted similar relief after finding

that a school violated the terms of student handbooks.  In *Doe v. Visitors of George Mason*, 179 F. Supp.

3d 583, 587-88 (E.D. Va. 2016), a court considered the appropriate remedy after a student was

improperly expelled following a constitutionally inadequate disciplinary process that found him

responsible for sexual misconduct.  The court found, and the school did not contest, that vacating the

prior discipline, and reinstating the student, "with any reference to his… expulsion on misconduct grounds expunged from his educational records" was appropriate. 179 F.Supp.3d at 587-88. In *Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016), following an expedited consolidated bench trial on both the merits of Plaintiff's case and his request for a preliminary injunction, the court found that the school had breached a contract by failing to follow certain procedures in the school's code of student conduct. The Court ordered the school to "vacate its finding and sanction against [the student] and expunge his record accordingly." 210 F. Supp. 3d at 346. Finally, *in Doe v. Trustees of Boston College* et al, D. Mass. No. 1:15-cv-10790 (Docket Entry #200, May 14, 2020), a jury found in favor of Plaintiff on a breach of contract claim related to the handling of a sexual misconduct allegation and awarded damages. The court then ordered permanent injunctive relief including: "vacating of the adverse finding, expungement of suspension on this basis and no reporting or dissemination of same to any third-party inquiring about [the student]." *Id.*

## CONCLUSION

This Court should enter partial summary judgment in favor of Plaintiff as to liability on the breach of Contract Claim in Count II of the Amended Complaint  The Court should issue permanent injunctive relief vacating of the adverse finding, expunging Plaintiff's record, and prohibiting the school from reporting or disseminating information about the matter to any third-party inquiring about Doe. This matter should then be set for trial on the issue of damages along with the trial on Plaintiff's remaining claims.

Respectfully submitted,

_____/s/ Riley H. Ross III_____
Riley H. Ross III
MINCEY FITZPATRICK ROSS, LLC
Two Penn Center
1500 JFK Blvd., Suite 1525
Philadelphia, PA 19102

Joshua Adam Engel (OH 0075769)
*Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the ECF System this August 25, 2020 upon all counsel of record.

_____/s/ Riley H. Ross III_____
Riley H. Ross III

11