UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | Case Number: 2:19-cv-00358 |
| Plaintiff-, | Judge: SANCHEZ |
| v. | REPLY TO RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| UNIVERSITY OF THE SCIENCES. | |
| Defendants-Appellees | and |
| | RESPONSE IN OPPOSITION TO MOTION TO STAY LITIGATION |

Plaintiff John Doe respectfully submits this Reply to Defendant's Response to Plaintiff's Motion for a Preliminary Injunction. (Doc#70. *See also* Doc#58 (Motion).)  Plaintiff also respectfully submits this Response in Opposition to Plaintiff's Motion to Stay Litigation.

Plaintiff seeks an Order prohibiting Defendant from imposing any disciplinary sanctions against Plaintiff related to the alleged sexual misconduct described in the Amended Complaint and restoring him as a student in good standing. *See* Proposed Order.

## ARGUMENT

The Defendant's approach to this Motion could not be more wrong.  Defendant argues that Plaintiff should not be "reinstate[d] as a USciences student without requiring a hearing process." Def. Memo. at 10.  With all due respect, this is 180 degrees backward.  Plaintiff should not be *removed* as a student without requiring a valid hearing process.  The request for a preliminary injunction restoring him as a student until Defendant completes a fair and equitable process is more than reasonable and necessary to avoid irreparable harm – it is consistent with the most basic ideas

1

of fundamental justice and liberal democracy. Since before the founding of the Republic, courts have rejected the idea that powerful institutions may impose discipline prior to providing an opportunity to be heard. That kind of Star Chamber is repugnant to the fundamental principle of fairness. *Cf. Faretta v. California*, 422 U.S. 806, 821–22 (1975) ("the Star Chamber has, for centuries, symbolized disregard of basic individual rights.").

### A.     The Third Circuit Has Spoken Clearly – This Establishes A Substantial Likelihood Of Success

The decision of the Third Circuit in this case is clear and unambiguous. *Doe v. Univ. of the Sciences*, 961 F.3d 203 (3d Cir. 2020). The Third Circuit held, *inter alia*,[1] that Defendant breached its contractual obligation to provide a fundamentally fair and equitable disciplinary process by failing to provide John Doe with an adversarial hearing and the opportunity to confront his accusers. 961 F.3d at 215-216.

What does this mean for purposes of this hearing? The Third Circuit's decision means that the outcome of the prior unfair disciplinary process used by the school, i.e., the expulsion, should be vacated and Plaintiff returned to the same status as before the process was started. *See Doe v. Visitors of George Mason*, 179 F. Supp. 3d 583, 587-88 (E.D. Va. 2016) (vacating the prior discipline, and reinstating the student, "with any reference to his… expulsion on misconduct grounds expunged from his educational records"); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 346 (D.R.I. 2016) (ordering

---

[1] This Motion involves only preliminary injunctive relief. Regardless of how the Court rules on this Motion, the Third Circuit's decision makes clear that Plaintiff will still have viable claims for damages under both a breach of contract theory and a Title IX Selective Enforcement theory. Plaintiff seems to believe that the outcome of any future disciplinary hearing affects those claims. It does not. A Title IX selective enforcement claim for damages (and attorney's fees pursuant to 42 U.S.C. § 1988), for example, is considered without regard to the student's culpability. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). A claim for damages due to the lack of fundamental fairness similarly proceeds without regard to the wisdom of the underlying deprivation and without regard to any subsequent disciplinary hearing *Cf. Carey v. Piphus,* 435 U.S. 247, 265 (1978) (procedural due process claim by students was viable even if the disciplinary sanctions "were justified").

school to "vacate its finding and sanction against [the student] and expunge his record accordingly").[2]

**B.     A New Hearing Does Not Negate Irreparable Harm**

The cases cited by Plaintiff in his initial Memorandum establish clearly that sanctions imposed by a university constitute irreparable harm because they have a substantial lasting impact on students' personal lives, educational and employment opportunities, and reputations in the community. *See* Pl. Memo. (Doc#58) at 12-13 (collecting cases). Defendant makes no effort to distinguish these on-point decisions.[3] Plaintiff has submitted a supplemental affidavit that includes a rejection letter from the college John Doe attempted to attend after his expulsion. The letter explicitly states that John Doe's application was rejected because his background might violate the school's campus safety initiative. This is clear proof that John Doe will suffer irreparable harm as long as the expulsion remains on his transcript. (Doe Supp. Aff. ¶9.)

Defendant may – as it appears to have done – re-start the disciplinary process. (*See* Rickmond Decl., Doc#70-1.) This is not a reason to deny the Motion. Plaintiff acknowledges that

---

[2] Defendant suggests that Plaintiff views the decision of the Third Circuit as an "exoneration." Def. Memo. at 1-2. This is not correct. Plaintiff seeks only that the results of the prior flawed process be vacated and that he be placed back in the position he was in before the process started. This is the equivalent of a criminal defendant who has a conviction overturned for procedural reasons – the defendant is not exonerated, just restored to his position prior to the conviction (including – as Defendant seems to forget – the presumption of innocence).

[3] Defendant relies upon a number of cases not involving student discipline. *Reilly v. City of Harri*sburg, 858 F.3d 173 (3d Cir. 2017); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992). These cases are inapposite for this reason. The only case involving a student cited by Defendant is *Doe v. Princeton Univ.*, D.N.J. No. 18-16539, 2019 U.S. Dist. LEXIS 4449, at *18-19 (Jan. 9, 2019). In that case, however, the student sought to enjoin a process before any discipline had actually been imposed and was not, as in this case, seeking reinstatement.

Defendant may do this.[4] But, this does not negate the fact that, as of this moment, Plaintiff should be restored as a student in good standing until that process is completed.[5]

One flaw in Defendant's approach is seen if the Court considers that John Doe may be found "not responsible" under the process.[6] Yet, even with this happy outcome, Plaintiff would have been denied the ability to take classes for weeks and, possibly, this entire semester.

Defendant's assertion that this "new" hearing will negate a finding of irreparable harm should be rejected as speculative. Defendant has adopted a new Title IX Policy, in part as a result of the Third Circuit decision in this case and, in part, presumably, to comply with new regulations from the Department of Education.[7] The effort of Defendant to jam through a "new" hearing seems to create more problems and raise more questions.[8] For example, Defendant appears to ignore many of the procedural guarantees of the policy – such as an "intake process," the availability of "Alternative Resolution," and a detailed investigation process. Defendant also ignores that the alleged misconduct by John Doe occurred off-campus – a problem because the new policy applies only to conduct that occurs "on University of the Sciences property" or property "owned or controlled by a University-affiliated student organization." (*See* Doe Supp. Aff. ¶4.)[9]

---

[4] Plaintiff is not conceding that the disciplinary process proposed by Defendant complies with Pennsylvania or federal law.

[5] Presumably, John Doe is considered to be innocent until proven responsible at the hearing – yet the school seeks to treat him like he is guilty by banning him from classes and campus before any finding of a hearing panel.

[6] Defendant does not appear to really accept the possibility that John Doe may be found not responsible – which, of course, calls into question whether the "new" process proposed by Defendant is truly fair and equitable.

[7] https://www.usciences.edu/administrative-offices/compliance/sexual-misconduct-policy.pdf

[8] "Let the jury consider their verdict," the King said, for about the twentieth time that day. "No, no!" said the Queen. "Sentence first—verdict afterwards." "Stuff and nonsense!" said Alice loudly.

[9] Ironically, in attempting to conduct a hearing on September 10th, Defendant is attempting to conduct a student disciplinary process against someone Defendant refuses to as admit is currently a student.

The speculative nature of the hearing process contemplated by Defendant is illustrated by the observation that the use of such a process will guarantee only that the parties will be back, again, in front of this Court. The rushed process as currently contemplated is likely to not be fair and equitable. The University's bias can be seen in the fact that – despite the contrary language from the Third Circuit – the University continues to refuse to initiate disciplinary proceedings against Roe 1 and Roe 2 even though it is aware of their possible misconduct. (Doe Supp. Aff. ¶6.) *Compare Univ. of the Sciences*, 961 F.3d at 209 ("Doe's complaint contains plausible allegations supporting the reasonable inference that [Defendant] discriminated against him on account of his sex" due to failure to pursue claims against Roe 1 and Roe 2). The over two-year delay in time is likely to make it impossible for Plaintiff to cobble together an effective defense – especially when many witnesses likely no longer remain on campus and the August 24, 2020 Notice provides John Doe with only 4 days to gather and submit additional information to be used at the hearing. (Doe Supp. Aff. ¶¶7-8.)

**C.     Other Injunction Factors And Bond**

Defendant does not argue that an injunction will not cause any harm to third parties or Defendant or that an injunction would be in the public interest.

Defendant's argument for $1,000,000 bond is speculative, unsupported by any evidence of possible damages, and intended to be punitive. Defendant cites no authority to support its position and makes no effort to distinguish the cases cited by Plaintiff suggesting that students should only be required to post nominal bond (if any). *See* Pl. Memo. at 14 (collecting cases).

**D.     The Motion To Stay Should Be Denied**

This Third Circuit's decision establishes that Plaintiff – regardless of the outcome of any subsequent disciplinary proceeding conducted by Defendant – has viable claims for damages under both a breach of contract and Title IX selective enforcement theory. These claims have been

pending for years and – rather than being stayed -- should proceed on an expedited basis through discovery and trial.

## CONCLUSION

This Court should issue a Preliminary Injunction prohibiting Defendant from imposing any disciplinary sanctions against Plaintiff related to the alleged sexual misconduct described in this Amended Complaint pending the completion of trial and the consideration of permanent injunctive relief.  *See* Proposed Order.

Respectfully submitted,

/s/ Riley H. Ross III
Riley H. Ross III
MINCEY FITZPATRICK ROSS, LLC
Two Penn Center
1500 JFK Blvd., Suite 1525
Philadelphia, PA 19102

Joshua Adam Engel (OH 0075769)
*Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the ECF System this August 25, 2020 upon all counsel of record.

/s/ Riley H. Ross III
Riley H. Ross III