# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE,

Plaintiff-,

v.

UNIVERSITY OF THE SCIENCES.

Defendants-Appellees

Case Number: 2:19-cv-00358

Judge:  SANCHEZ

SUPPLEMENTAL AFFIDAVIT OF
JOHN DOE

[REDACTED], a/k/a John Doe does depose and state as follows.

1. I am the Plaintiff in the above-referenced matter.  I am submitting this Supplemental Affidavit in support of the Motion for a Temporary Restraining Order and Preliminary Injunction.

2. I am aware that University of the Sciences wishes to provide me with a "Hearing" on or about September 10, 2020.  The University has refused to communicate with my counsel about this Hearing and scheduled the hearing without consulting me or my attorney about availability.

3. I am also aware the University of the Sciences has adopted a new Title IX Policy.  A copy of the Policy is attached to this Affidavit.  This Policy is available at https://www.usciences.edu/administrative-offices/compliance/sexual-misconduct-policy.pdf.  I believe that the hearing scheduled by the University will be conducted under this new policy.

4. My alleged misconduct is not prohibited by the new policy.  I was alleged to have engaged in sexual misconduct with Roe 1 and Roe 2 at my apartment off campus.  (I deny any misconduct.)  The new policy specifically excludes off-campus activity.  Page 10 of the new policy states:

> *Sexual Misconduct excluded from Title IX by Geography* is prohibited behavior as defined by Title IX but does not occur:
> - on University of the Sciences property;
> - in connection with a University or University-Recognized Program or Activity within the United States; or
> - any building owned or controlled by a University-affiliated student organization

5.  The University has not complied with the terms of the new policy.  The University has not conducted an investigation under the new policy.  Instead, the University apparently wishes to use the prior investigation in this matter – an investigation that I have alleged in the Amended Complaint (¶¶56-65) was flawed and biased.

6.  I do not believe that this will be a fair and equitable hearing.  The University appears to be committed to finding me responsible by whatever means available.  I base this conclusion, in part, on the fact that the University has not considered that other students, including Roe 1 and Roe 2, violated the University's sexual misconduct policies.  In particular, the University has had notice that Roe 1 and Roe may have violated the Sexual Misconduct Policy when the investigator submitted her report to the Title IX coordinator.  The University has not informed me that it is opening an investigation into Roe 1 and Roe 2 (as the victim, I understand that I would have been informed).  I intend to submit complaints against Roe 1 and Roe 2 when I am reinstated as a student.

7.  The passage of time makes it difficult – if not impossible – for me to present an adequate defense.  In addition to the fact that memories have faded, many witnesses are no longer students at the University and, as a result, are not available to testify.

8.  I do not have adequate time to prepare for the hearing.  The University has required that I provide any additional material by August 28, 2020 – a mere four days after receiving notice of the hearing.

9.  If the Court does not grant preliminary injunctive relief, I will continue to sustain substantial injury, damage, and loss.  The University suggests that I only have one semester of work left and that a

required course is only offered in the spring – but this does not mean that I would not benefit from taking classes now or that I don't continue to suffer damage to my academic and professional reputations.  The University also does not take into account that reinstatement now is not a "preference" but necessary to my ability to apply to medical school.  Right now, I still have the stigma of being labeled 'responsible' for engaging in sexual misconduct. I believe that the stigma related to a finding of responsibility for sexual misconduct will make it difficult, if not impossible, for me to successfully apply to medical school.  Most medical schools have application deadlines in late 2020.  (See https://students-residents.aamc.org/applying-medical-school/article/participating-medical-schools-deadlines/)  I know from experience that the discipline imposed by the University has damaged my ability to apply to other schools.  For example, one school rejected me based on the nature of the alleged misconduct found by USciences as a result of their flawed process.  The rejection letter from this school is set forth here:



# ECU.

Office of Undergraduate Admissions
Mail Stop 517 | East Carolina University* | Greenville, NC 27858-4353
252-328-6640 office | admissions@ecu.edu | www.ecu.edu/admissions

June 13, 2019

████████████████████████

Dear ████████████████

Your application for admission to East Carolina University has been denied based upon the recommendation from the ECU Admissions Safety Committee. This Committee is charged with reviewing cases where an applicant's background might violate the University of North Carolina General Administration's Campus Safety Initiative.

There is no appeal of this decision.

Please contact the **Office of the Dean of Students** at 252-328-9297 with any questions.

Sincerely,

Heidi Puckett, Ed.D.
Interim Director
Undergraduate Admissions

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of August 2020.



[REDACTED] a/k/a John Doe

4



# SEXUAL MISCONDUCT POLICY
# GRC-0005

| | |
|---|---|
| **Effective Date:** | *August 14, 2020* |
| **Last Updated:** | *August 14, 2020* |
| **Responsible University Office:** | *Title IX Office* |
| **Responsible University Administrator:** | *Chief Financial & Operating Officer* |
| **Policy Contact:** | *Title IX Coordinator* *j.rickmond@usciences.edu* |

## I.  POLICY STATEMENT

The University of the Sciences (the "University") is committed to maintaining a safe and healthy educational and work environment, in which no member of the University community is denied the benefits of, or discriminated against, as it relates to any University program or activity, on the basis of sex, sexual orientation, or gender identity. Gender-based and sexual harassment, including sexual violence, are forms of sex discrimination in that they deny or limit an individual's ability to participate in or benefit from University programs or activities.

This policy identifies how members of the University community can report prohibited behavior to the University confidentially, what resources are available both on and off campus to aid them, and the rights of all parties. It identifies the University's Title IX Coordinator and Deputy Coordinators, describes the Coordinator's role in compliance with Title IX, the Clery Act and VAWA, and provides information about how reports of prohibited behavior are assessed, investigated, and resolved.

## II.  RATIONALE

The University is devoted to fostering a climate of respect and security on campus as it relates to preventing, educating, and responding to acts of prohibited behavior and adhering to Clery, Title IX, and VAWA regulations. This policy serves to demonstrate the University's commitment to:

- Disseminating clear policies, procedures, and processes for responding to prohibited behavior reported to the University;
- Delivering prevention, education and awareness programs, as well as ongoing training and public-service campaigns, so that students and employees may identify what behavior constitutes prohibited behavior; understand how to report such misconduct; recognize warning signs of potentially abusive behavior and ways to reduce risks; and learn about safe and positive options for bystander intervention that may be carried out by an individual to prevent harm or intervene when there is a risk of prohibited behavior against a person;

- Engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable;
- Supporting Complainants and Respondents equally and holding persons accountable for established violations of this policy; and
- Providing a written explanation of the rights and procedures regardless if that individual is a Complainant or Respondent.

## III.   ENTITIES AFFECTED BY THIS POLICY

Jurisdiction

This policy applies to prohibited behavior that is committed by students (as defined in the Student Handbook), University-affiliated organizations, faculty, staff, University appointees, or third parties. When the Respondent is both a student and an employee: (1) the Title IX Coordinator will determine the appropriate procedures to use based on the facts and circumstances of the situation; and (2) the Respondent may receive sanctions as defined by the Student Handbook and/or Employee Standards of Conduct Policy and Corrective Action Procedures.

Title IX prohibits sexual harassment that occurs in the following locations:
- on University of the Sciences property;
- in connection with a University or University-Recognized Program or Activity within the United States; or
- any building owned or controlled by a University-affiliated student organization.

This Policy likewise prohibits sexual harassment and/or sexual misconduct that may have the effect of creating a hostile environment for a member of the University community regardless of location. This Policy will identify differences in procedures where Title IX's definition of sexual harassment prohibits the behavior or where this Policy itself prohibits the behavior.   Questions related to procedural requirements and/or individual process should be addressed to the Title IX Coordinator.

Title IX Team

The Title IX Coordinator is a designated individual recognized by the University and is responsible for the oversight of this policy and any procedures related to it. The Title IX Coordinator is responsible for overseeing and resolving all sexual misconduct reports and identifying and addressing any patterns or systemic concerns that arise during the review of such reports. Responsibilities of the Title IX Coordinator include the following:
- Oversight of a prompt, fair, equitable investigation and resolution process for reports of prohibited behavior at the University.
- Evaluation of trends on campus through the use of information reported and data collected.
- Development of recommendations for campus-wide training and education programs and other remedial actions designated to eliminate prohibited behavior, prevent its recurrence, and address its effects.
- Dissemination of information regarding victim support and other services to any individual reporting prohibited behavior.

- The Title IX Coordinator may identify additional Deputy Coordinators within the University. Current Deputy Coordinators include:
  - Title IX Deputy Coordinator for Faculty
  - Title IX Deputy Coordinator for Staff
  - Title IX Deputy Coordinator for Students

The Title IX Coordinator may delegate the authority to take some or all the steps assigned to that position to another member of the Title IX Team. A current list of the Title IX Team members can be found in Appendix A.

Confidential Employees

Confidential employees are University agents who provide support and assistance without initiating a sexual misconduct report. Confidential employees are not required to reveal an individual's identity or whether an individual has disclosed an incident. Exceptions to confidentiality include:

- The individual gives written consent for its disclosure;
- There is a concern that the individual will likely cause serious physical harm to self or others; or
- The information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

Confidentiality exists in the context of laws that protect certain relationship including medical and clinical care providers (and those who provide administrative services related to the provisions of medical and clinical care), mental health providers, counselors, and ordained clergy; all of whom may engage in confidential communication under Pennsylvania law.

A list of current confidential employees can be found in Appendix B.

Mandatory Reporters

Mandatory Reporters are required to share any prohibited conduct reported to them or observed by them, including the nature of the incident, date, time, general location, and name of the Complainant or report, if known, to the Title IX Coordinator.  The University considers a Mandatory Reporter has the authority to institute corrective measures.  While every employee may not be a Mandatory Reporter, all employees are encouraged to notify the Title Coordinator when they learn of an incident and once they have obtained the Complainant's permission.

A list of Mandatory Reporters can be found in Appendix C.

Public Events

Public awareness events, protests, candlelight vigils, "survivor speak outs," or other forums in which students, staff, or faculty members disclose incidents of prohibited behavior, are not considered a report or notice to the University of prohibited behavior for purposes of initiating a Formal Complaint.  Such events may, however, inform the need for campus-wide education and prevention efforts, and the University will provide information about the Sexual Misconduct Policy and victim rights at such events.

Academic Freedom

The University is firmly committed to free expression and academic freedom and to creating and maintaining a safe, healthy, and harassment-free environment for all members of its community. Sexual misconduct, including any resulting retaliation, are not protected expression nor the proper exercise of academic freedom. The University will consider principles of free expression and academic freedom in the investigation of reports of sexual misconduct or retaliation that involve an individual's statements or speech.

## IV.   DEFINITIONS

Commonly Used Terms

*Administrative Panel for Appeals* is a 3-person panel chosen by the Title IX Coordinator from a pool of University employees who are appropriately trained in sexual misconduct matters.  The panel may include full-time benefits-eligible employees. No students may serve on this panel. In any individual incident, members of this panel shall be different than the individuals who have had prior involvement with the case (including but not limited to investigator and Hearing Officer).  This panel shall act as the body determining the outcome of an appeal under this policy.

*Advisor* is a person providing procedural assistance or providing support to the Complainant or Respondent. The Complainant and the Respondent each have the opportunity to be advised by an Advisor of their choice, including legal counsel, at any stage of the process, and to be accompanied by that Advisor at any meeting in which the Complainant or the Respondent is required to be present. An Advisor can consult and advise his or her advisee, and may not speak for the advisee at any meeting. During a hearing, an Advisor is responsible for direct questions to any administrator, party, or witness on behalf of their advisee. Should the Advisor become disruptive during any meeting, the Title IX Coordinator, investigator, or Hearing Officer may remove the Advisor. A parent may serve as an Advisor to the Complainant or Respondent, and in such case, shall be treated as set forth above. A Complainant or Respondent may only utilize one Advisor at a given time.

*Advocate* is a person providing support to the Complainant or the Respondent throughout the process. The Complainant and Respondent have the opportunity to have an Advocate of their choice, including legal counsel, at any stage in the process, and to be accompanied by that Advocate at any meeting in which the Complainant or the Respondent is required to be present. An Advocate can consult with the party, and may not speak on behalf of that individual at any meeting. Should the Advocate become disruptive during any meeting, the Title IX Coordinator, investigator, or Hearing Officer may remove the Advocate. A parent may serve as an Advocate to the Complainant or Respondent, and in such case, shall be treated as set forth above.  A Complainant or Respondent may only utilize one Advocate at a given time.

*Affirmative Consent* is informed, freely-given, active permission, through the demonstration of clear words or actions, that a person has indicated permission to engage in mutually agreed-upon sexual activity. Affirmative consent cannot be obtained by force, intimidation, or coercion. Affirmative consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. Impairment by alcohol and/or other drugs is not a defense to any violation of this Policy.

4

A person who wants to engage in a specific sexual activity is responsible for obtaining consent for that activity. Affirmative consent cannot be obtained or implied by silence or lack of resistance. Lack of protest does not constitute consent. Lack of resistance does not constitute consent. Silence and/or passivity also do not constitute consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Policy. Consent cannot be attained through assumptions.

Consent to one form of sexual activity does not, by itself, constitute consent to another form of sexual activity. Affirmative consent may be withdrawn at any time through the use of words or actions. Once consent is withdrawn, the sexual activity must cease immediately. Consent to sexual activity on a prior occasion does not, by itself, constitute consent to future sexual activity. In cases of prior relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of consent.

*Amnesty* allows for reporting incidents of sexual misconduct without the fear of disciplinary action of the Alcohol or Drug Policies. The health and safety of every individual at USciences is of utmost importance. The University recognizes that individuals who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time sexual misconduct occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. The University strongly encourages individuals to report incidents of sexual misconduct. A witness to or an individual who experiences sexual misconduct, acting in good faith, who discloses any incident of sexual misconduct to the University or law enforcement will not be sanctioned for violations of alcohol and/or drug use policies occurring at or near the time of the incident(s). The University may request the individual attend an approved alcohol or drug education program and without incurring any cost for such program. This amnesty provision also applies to student groups making a report of sexual misconduct. Amnesty does not preclude or prevent action by police or other legal authorities pursuant to relevant state or federal criminal statutes.

*Coercion* is the practice of forcing another party to act in an involuntary manner by use of threats or force. Coercion includes an effort to persuade, entice, or attract another person to act. When a person makes clear a decision not to participate in a particular form of sexual contact or sexual intercourse, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can constitute coercion.

*Complainant* is an individual who is eligible to file a report and a Formal Complaint of a violation of this policy. It also includes any person who is alleged to be the victim of conduct prohibited by this policy.

*Confidentiality* exists in the context of laws that protect certain relationships including medical and clinical care providers and those who provide administrative services related to the provisions of medical and clinical care, mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Pennsylvania law. Confidentiality allows a Complainant to communicate without any requirement to reveal personally identifying information about an incident to the University without the victim/patient's permission. The Title IX team is not able to provide confidentiality. However, it is committed to protecting the privacy of all individuals involved in the resolution of a report under this policy. The University also is committed to providing assistance to help students, employees and third parties make informed choices.

With respect to any report under this policy, the University will make reasonable efforts to protect the privacy of participants, in accordance with applicable state and federal law.

*Course of Conduct* means two or more acts. The acts, which can be by any action, method, device or means, can be but are not limited to, behavior taken directly, indirectly, or through third parties. Examples include but are not limited to follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property.

*Employee* is any individual employed at the University.

*Force* means words and/or actions that substantially impairs a person's ability to voluntarily choose whether to take an action or participate in an activity.

*Formal Complaint* is a written request signed by the Complainant or Title IX Coordinator to investigate an allegation of behavior prohibited by this policy.

*Hearing Officer* is an individual appropriately trained in matters of sexual misconduct. This individual is designated to coordinate and supervise a live hearing. A Hearing Officer may be a University benefits-eligible employee or external to the University. A student cannot serve in the capacity of Hearing Officer. In any individual incident, a Hearing Officer shall be different than the individuals who have had prior involvement with the case (including, but not limited to, the investigator). A Hearing Officer will make determinations of responsibility and issue sanctions, as appropriate.

*Hostile Environment* is defined as a situation where an individual's conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education, employment, or co-curricular programs and/or activities. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective.

*Incapacitation* means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity. A person who is incapacitated is unable, temporarily or permanently, to give consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

*Intimidation* is an implied threat that menaces or causes reasonable fear in another person. A person's size, alone, does not constitute intimidation; however, a person's size may be used in a way that constitutes intimidation (e.g., blocking access to an exit).

*Physical Assault* is threatening or causing physical harm, or engaging in other behavior that threatens or endangers the health or safety of any person. Physical assault will be addressed under this Policy if it involves sexual or gender-based harassment, Intimate Partner Violence (IPV), or is part of a course of conduct under the stalking definition.

*Privacy* means that information related to a report of prohibited behavior will be shared with a limited circle of University employees who "need to know" in order to assist in the assessment, investigation and resolution of the report.

6

When implementing protective measures, the University will maintain privacy to the extent that it will not impair the University's ability to implement such measures. The Title IX Coordinator is prohibited from answering any questions about the investigation or providing any information to any third party including parent(s) or guardian(s) of the Complainant, the Respondent or any witnesses, except in the case of minors. The privacy of student education records will be protected in accordance with the Family Educational Rights and Privacy Act (FERPA). All documentation related to a student's report, investigation, and resolution are protected by FERPA and will not be released, except as required by law. The Title IX Coordinator may provide only information relating to the process. When required by the Clery Act, non-identifying information about a report will be shared with the Department of Public Safety. A Complainant's name will never be published in connection with the University's obligations under the Clery Act.

*Respondent* is an individual responding to an allegation of conduct that could constitute a violation of this policy.

*Rights & Responsibilities* For a list of Rights and Responsibilities, see Appendix D.

*Sexual Contact* is any intentional sexual touching, however slight, with any object or body part, performed by a person upon another person. It includes but is not limited to
- intentional touching of the breasts, buttocks, groin, or genitals, whether clothed or unclothed;
- intentionally touching another with any of these body parts; or
- Coercing another person to touch you or themselves with or on any of these body parts.

*Sexual Intercourse* is any penetration, however slight, with any object or body part and performed by a person upon another person. Examples include, but are not limited to:
- vaginal penetration by a penis, object, tongue, or finger;
- anal penetration by a penis, object, tongue or finger; and
- any contact, no matter how slight, between the mouth of one person and the genitalia of another person.

*Substantial Emotional Distress* means significant mental suffering or anguish.

*Supportive Measures* are non-disciplinary, non-punitive individualized services designed to restore or preserve equal access to educational programs or activities. This includes measures designed to protect the safety of the parties, the campus, and its community, or to deter prohibited behavior. Supportive measures will be offered as reasonably available and are without a fee or charge. Supportive measures are available regardless if a Formal Complaint is filed and are available to the Complainant and Respondent. Examples include, but are not limited to, mutual no contact orders, changes in housing assignment for one or both parties, changes in work or housing locations, academic accommodations, changes in supervisor or work location, removal from campus housing or grounds, social restrictions, changes in parking locations, walking escorts, counseling, and emergency removal.

*Threats* are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples include, but are not limited to:
- threats to harm a person physically;
- threats to reveal private information to harm a person's reputation; or
- threats to cause personal, academic, or economic harm.

*University-Recognized Program or Activity* means locations, events, or circumstances over which the University exercises substantial control over both the Respondent and the context in which the alleged prohibited behavior occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

*Violence* means that a person is exerting control over another person through the use of physical force. Examples of violence include but are not limited to: hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

Prohibited Behavior as defined by Title IX

*Dating Violence* is violence committed by an individual who is or has been in a social relationship of a romantic or intimate nature. The existence of such a relationship shall be based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

Dating violence includes but is not limited to sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence.

*Domestic Violence* is a felony or misdemeanor crime of violence committed:
- by a current or former spouse or intimate partner of the victim;
- by a person with whom the victim shares a child in common;
- by a person who is cohabitating with or has cohabited with the victim as a spouse or intimate partner;
- By a person similarly situation to a spouse of the Complainant under the domestic or family violence laws of Pennsylvania;
- by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

*Gender Based Harassment* includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve behavior of a sexual nature, where:
- Submission to or indication of such behavior is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "quid pro quo" harassment); or
- Such behavior creates a hostile environment.

*Sexual Assault* is any sexual act directed against another person, without the consent of the person, including instances where the Complainant is incapable of giving consent.

- Rape: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person**,** without the consent of the person.

- <u>Fondling</u>: The touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, without the consent of the victim, including instances where the person is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
- <u>Incest</u>: Non-forcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.
- <u>Statutory Rape</u>: Non-forcible sexual intercourse with a person who is under the statutory age of consent. Pursuant to Pennsylvania law, persons ages 16 and older can legally consent to sexual activity with anyone they choose, as long as the other person does not have authority over them as defined in Pennsylvania's institutional sexual assault statute, such as professors or coaches. Prohibited interactions between adults and minors is further defined in the USciences Minors Policy. Pennsylvania's corruption of minors law also applies to any individual under 18.

*Sexual Harassment* is any unwelcome sexual advance, request for sexual favors, or other unwanted behavior of a sexual nature, whether verbal, non-verbal, graphic, physical, suggestive, or otherwise, where:
- A University employee conditions the provision of an aid, benefit, or service of the University on an individual's participation;
- Unwelcome conduct that a reasonable person would find so severe, pervasive, and objectively offensive that it denies a person equal educational access to the University's program or activity; and
- Any instance of sexual assault, dating violence, domestic violence, or stalking.

Examples include but are not limited to:
- Giving someone unwanted gifts of a sexual nature.
- Displaying sexually-suggestive materials or sending notes, email, or jokes to a person that are sexually explicit.
- Touching someone sexually without their consent.
- Massaging someone without permission.
- Brushing up against someone repeatedly.
- Continuing to ask out a person who already has said they are not interested.
- Exposing one's genitalia or breasts to another person.

*Stalking* (including Cyberstalking) occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

*Retaliation* means that neither the University nor any individual can intimidate, threaten, coerce, or discriminate against any individual that
- Made a report or Formal Complaint; or
- Participated, assisted, testified, or refused to participate during an investigation, proceeding or hearing.

Retaliation is done so for the purpose of interfering with the rights or procedures within this policy. Retaliation arises out of circumstances in relation to a report or Formal Complaint and may not include additional prohibited behavior contained within this policy. Retaliation may include, but is not limited to, the following:

- Employment actions such as termination, refusal to hire, or denial of promotion.
- Other actions affecting a person's employment or academic or school-related activities such as threats, unjustified negative evaluations, unjustified negative references, or increased surveillance.
- Any other action such as an assault or unfounded civil or criminal charges that are likely to deter reasonable people from pursuing their rights.

Prohibited Behavior In Addition To Those Identified By Title IX

*Sexual Exploitation* is an act or acts committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit, advantage, or any other non-legitimate purpose. Examples include, but are not limited to, purposely or knowingly doing any of the following:

- Causing the incapacitation of another person (through alcohol, drugs, or any other means) for the purpose of compromising that person's ability to give consent to sexual activity.
- Observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all parties involved.
- Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images).
- Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy).
- Recording or photographing private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent.
- Exposing, disseminating or posting images of private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent.
- Prostituting another person.
- Knowingly exposing another person to a sexually transmitted infection or virus without the other's knowledge.

*Sexual Misconduct excluded from Title IX by Geography* is prohibited behavior as defined by Title IX but does not occur:

- on University of the Sciences property;
- in connection with a University or University-Recognized Program or Activity within the United States; or
- any building owned or controlled by a University-affiliated student organization

## POLICY PROCEDURES

Reporting

Any person who believes they have been a victim of, have witnessed, or otherwise wishes to report an incident of sexual misconduct, may do so to the Title IX Coordinator or any other Mandatory Reporter. An individual does not have to be a member of the University community to file a report under this policy.

Reporting prohibited behaviors to the University empowers Complainants to obtain support they may need and enables the University to respond appropriately; (including, but not limited to, also offering supportive measures to the Respondent, conducting an investigation, and pursuing disciplinary action against a Respondent). Reporting helps keep the Title IX Coordinator informed of the general extent and nature of prohibited behavior so that the Title IX Coordinator can track patterns, evaluate the scope of behavior, and formulate appropriate campus-wide responses.

Mandatory reporters are required to report all information pertaining to instances of prohibited behavior to the Title IX Coordinator. Complainants are not required to report prohibited behavior if they do not want the University to respond to the incident or assist with supportive measures.

Reports can be submitted by way of the following methods:
- Online reporting form: https://www.usciences.edu/titleix
- In person: Student Affairs Suite, Whitecar Hall, Room 1009
- Phone: 215-596-7635
- Email: titleix@usciences.edu
- Mail: 600 South 43rd Street, Philadelphia, PA 19104

Anonymous reports are accepted. The University will respond promptly and equitably to anonymous reports, but the response may be limited if the report does not include identifying information and/or an adequate description of the facts and circumstances. Individuals who report are encouraged to include identifying information to the Title IX Coordinator and can request anonymity following the assessment of the case. Any person who wishes to submit an anonymous report may do so through the online Sexual Misconduct Reporting Form (https://www.usciences.edu/titleix). The form can be filled out anonymously by omitting any identifying information.

The University encourages timely reporting of prohibited behavior so that the University can respond promptly and equitably; however, the University does not limit the timeframe for reporting. If the Respondent is not affiliated with the University at the time the report is made, the University will provide reasonably appropriate supportive measures to the Complainant, assist the Complainant in identifying external reporting options, and take other reasonable steps to prevent the recurrence of such behavior and remedy the effects, if appropriate.

Complainants may simultaneously file reports with the University and a law enforcement agency. The University will support Complainants in understanding and assessing their reporting options. It is the Complainant's choice whether to make such a report and they have the right to decline involvement with the police. The University's Office of Public Safety will assist any Complainant in notifying the appropriate law enforcement agency if they so desire.

Request for Limited Action
In the event a Complainant requests limited action from the University, the University must balance the Complainant's requests with the University's requirement to provide a safe and non-discriminatory environment for all University members.  A request for limited action may include the following:
- Request that the report of prohibited behavior or the Complainant's contact with a Title IX Coordinator not be disclosed to the Respondent;
- Decline to personally identify the Respondent;

11

- Decline to respond to communications from the Title IX Coordinator; or
- Request that the University not investigate the incident or stop an ongoing investigation that is not substantially complete.

By granting a request for limited action, the University may limit its options for responding. Thus the following information is considered when weighing whether to grant a request for limited action:

- The seriousness of the behavior;
- The respective ages and roles of the involved parties;
- Whether the University has received multiple reports of prohibited behavior under this policy involving the Respondent;
- Whether the circumstances suggest there is a risk of the Respondent committing additional acts of prohibited behavior;
- Whether the Respondent has a history of arrests or records indicating a history of violence;
- Whether the Respondent threatened further violence against the Complainant and other individuals involved;
- Whether the reported behavior was committed by multiple individuals;
- Whether the reported behavior was perpetrated with a weapon; and
- Whether the University possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).

Where the University is unable to accommodate requests for limited action, the University may seek disciplinary action against a Respondent or a course of action that eliminates or mitigates the effects of the prohibited behavior and prevents its recurrence but does not involve formal disciplinary action. The University will notify the Complainant of its action, and their options for participation.

<u>Intake and Assessment</u>
Upon receipt of a report of prohibited behavior, the Title IX Coordinator will arrange to meet with the Complainant in an intake meeting as soon as possible and within five (5) business days of receiving the report. At this meeting, the Title IX Coordinator will discuss and explain:

- Title IX process and procedures;
- Complainant resources;
- Complainant rights and responsibilities;
- Supportive measures and how to access them;
- Confidentiality and privacy considerations; and
- Retaliation.

At the intake meeting, the Title IX Coordinator will seek to determine how the Complainant wishes to proceed, which may include, but is not limited to:

- A request for resources or supportive measures;
- Assistance with reporting to law enforcement;
- No further action;
- Informal resolution; and
- Initiation of a Formal Complaint.

At the time a report is made, a Complainant need not decide whether to file a Formal Complaint. The University recognizes that not every individual will be prepared to file a complaint, and individuals are not expected or required to pursue a specific course of action.

In instances where the Complainant does not wish any action to be taken, the Title IX Coordinator must assess and make a determination in order to ensure the safety and wellbeing of the Complainant and the University community.

If the report of a violation of the Sexual Misconduct Policy also implicates other potential violations of the University's Code of Student Conduct (in the case of students) or potential violations of other University policies, the Title IX Coordinator, in consultation with other appropriate University personnel, will evaluate all reported allegations to determine whether the allegations may be investigated together without unduly delaying resolution. When the Title IX Coordinator determines that a single investigation is appropriate, the investigation and adjudication will be done in accordance with the Sexual Misconduct Policy. Any multi-charge complaint that includes a violation of Title IX will be adjudicated using the Title IX-specific procedures below.  A determination of responsibility for the violation of the Student Code of Conduct or violation of University policy will be evaluated by the Hearing Officer using the applicable policies.

In instances where the University determines the Sexual Misconduct Policy is not applicable, the Title IX Coordinator may refer the report to an alternate office (e.g. Dean of Students, Office of Student Conduct or Human Resources).

<u>Supportive Measures</u>
The Title IX Coordinator, in conjunction with the Deputy Title IX Coordinators, has the discretion to identify, impose, or modify any supportive measure based on available information. The University may implement supportive measures at any point during the Formal Complaint, investigation, or adjudication of the case. A Complainant is not required to submit a Formal Complaint in order to receive supportive measures and supportive measure can be made available to the Complainant and Respondent. The University will maintain the privacy of the parties when implementing supportive measures to the extent practicable and will promptly address any violation of supportive measures.

Supportive Measures may include, but are not limited to:
- Mutual no contact orders;
- Changes in housing assignment for one or both parties;
- Academic accommodations;
- Changes in supervisor or work location;
- Removal from campus housing or grounds;
- Social restrictions;
- Changes in parking locations;
- Walking escorts;
- Counseling; and
- Emergency Removal.

<u>Emergency Removal</u>
An emergency removal includes an involuntary removal or suspension of a student or employee.  Prior to an emergency removal, the Title IX Coordinator will conduct an individualized analysis for health and safety, and determine the presence of an immediate threat to the physical health or safety.

Once the Respondent is notified, the Respondent is banned from all property and buildings, owned and controlled by the University, and from participating in any University program or activity until the emergency removal is terminated.

At any point, either party can request a review to have the emergency removal amended or removed. The emergency removal remains in place during the review process.  A review of an emergency removal does not delay the investigation or resolution process and can occur concurrently. A review must be made in writing directed to the Title IX Coordinator addressing the appropriateness of the measure.

The decision regarding the review is made within three (3) business days by a member of the Title IX team. The Title IX team member is able to seek additional information from the non-appealing party, Title IX Coordinator, and campus or community stakeholders.

Termination of an emergency removal can occur
- At the conclusion of an appeal;
- As a result of a dismissal of sexual misconduct allegation; or
- At the conclusion of the adjudication procedures.

Formal Complaint

After the Complainant is provided their Rights and Responsibilities, a Complainant may file a Formal Complaint. A Formal Complaint is a signed (including electronic signature) document submitted to the Title IX Coordinator in person, by way of mail, or by email. The Formal Complaint notifies the University of the Complainant's wishes to proceed with adjudication or an alternative resolution process. In the event the University determines that it is necessary to protect the safety and well-being of the community, the Title IX Coordinator reserves the right to sign the Formal Complaint.

If the University receives more than one report arising out of the same set of facts or circumstances, the Title IX Coordinator may consolidate reports for the Formal Complaint.

The University will notify the Complainant of the prohibited behavior as defined by the Policy, including if the prohibited behavior falls within Title IX.

The University will resolve formal complaints in a prompt time frame. However, with good cause, the University may temporarily delay adjudication. In that event, written notification will be provided to the parties with rationale.  Examples of good cause include, but are not limited to, absence of a party, a party's advisor, or witness; concurrent law enforcement activity; need for language assistance; or accommodations of a disability.

Respondent Intake

Within five (5) business days of receiving the Formal Complaint, the Title IX Coordinator will meet with the Respondent. The University's stance is the Respondent is not responsible for the allegation until a determination of responsibility is reached at the conclusion of the adjudicative process.  During the Respondent intake, the Title IX Coordinator will discuss and explain:
- Title IX process and procedures;
- Sufficient details of the alleged prohibited behavior;
  - Identity of involved parties;
  - Date and location of alleged incident; and

14

- o   Identify the prohibited behavior as defined by the Policy, including if the prohibited behavior is defined by Title IX.
- Respondent resources;
- Respondent rights and responsibilities;
- Interim and supportive measures and how to access them;
- Confidentiality and privacy considerations; and
- Retaliation.

Dismissal of a Report

The University is required to investigate each Formal Complaint with the following exceptions.

- the Title IX Coordinator determines that the allegation, if true, would not constitute a violation of this Policy; or
- The behavior did not occur within the United States.

The University may dismiss a report in the following circumstances:

- A Complainant notifies the Title IX Coordinator in writing requesting to withdraw the Formal Complaint;
- The Respondent is not enrolled or employed by the University; or
- Circumstances are presented that prevent the University from conducting an investigation.

Within one (1) business day of the University's decision to dismiss a case, the Title IX Coordinator will notify all parties in writing, including a rationale. The dismissal of a case is subject to an appeal.

Alternative Resolution

After receiving a formal complaint and up until a determination of responsibility is made, the prohibited behavior may be resolved through alternative resolution. Under this process, the Complainant and Respondent waive the right to an investigation and adjudication, and the outcome reached may not be described in sanctions. Examples of alternative resolution processes include, but are not limited to, mediation, facilitated dialogue, conflict coaching, and restorative justice. The process of trying to reach an alternative resolution is voluntary and cannot be required by the University as a condition of enrollment or employment. The Alternative Resolution process is not available for an incident where the prohibited behavior is sexual harassment, the Respondent is an employee, and the Complainant is a student. At any time during an alternative resolution process, any of the parties may request that the process cease, and the investigation and adjudication process will continue.

Notification of an Alternative Resolution is a written document that confirms participation in this specific process. Included in the Notification of an Alternative Resolution is information clarifying the procedures, allegations, description of when an alternative resolution can be withdrawn, clarification of expectation on consequences, and record retention and privacy. The Notification of Alternative Resolution must be signed by the Complainant and Respondent.

An Alternative Resolution Agreement is a written agreement that executes the agreement to resolve the allegations developed through an alternative resolution. For a case to be considered closed, an Alternative Resolution Agreement must be signed by the Respondent and Complainant. Neither party may revoke or appeal an Alternative Resolution Agreement after it is fully executed. If an Alternative Resolution Agreement is not reached, then the formal resolution process will proceed.

15

Investigation

The University will investigate each Formal Complaint. The Title IX Coordinator will assign an investigator to the complaint. The burden of proof refers to who has the responsibility of showing a violation has occurred.  It is the responsibility of the University to satisfy the burden of proof. The parties do not have the burden to prove that a violation did or did not occur.  The investigator will review all evidence discovered and/or presented. The University prohibits knowingly making a false statement or knowingly submitting false information.

Parties have the opportunity to raise the issue of a potential conflict of interest or bias within two business days of being advised of the identity of the investigator. The Title IX Coordinator will determine whether a conflict of interest or bias exists. If conflict of interest or bias is determined to exist, the case will be assigned to a new investigator.

The investigator will request individual interviews with the Complainant, the Respondent, and other witnesses, as appropriate. Written notification will be provided of the date, time, location, participants, and purpose of the interview. Parties have the right to be accompanied by an Advisor and an Advocate of their choosing. Throughout the investigation an Advisor and Advocate may confer quietly with their advisee, exchange notes, and suggest questions to their advisee. The Advisor and Advocate may not make a presentation or otherwise represent either party during the interview.

The initial interviews with the Complainant and the Respondent should be in person, when possible. The purpose of the interviews is to gather and assess information about the incident(s) at issue in the complaint, not to solicit general evidence about either party's character. The investigator may wait to hold the initial interview with the Respondent until after the first meeting with the Complainant. The investigator will interview witnesses provided by both the Complainant and Respondent. Witnesses may be individuals identified by the Complainant, Respondent, a University representative, other witnesses, and any other persons the investigator considers it beneficial to interview. During the course of the investigation, the Complainant, Respondent, and witnesses can provide supporting evidence, including but not limited to emails, social media posts, direct messages, photographs, and voicemails. The University cannot access, consider, disclose or use any privileged communication or document (i.e., medical records and mental health records) unless the party voluntarily provides such evidence. After the collection of additional evidence is complete but prior to the conclusion of the investigation, the investigator may request individual follow-up interviews with the Complainant and Respondent to give each the opportunity to respond to the additional evidence.

In the event an individual has voluntarily or involuntarily consumed drugs or alcohol near the time the alleged sexual misconduct occurred, that individual may be hesitant to report due to fear of potential consequences for their own conduct. When an individual discloses any incident of sexual misconduct to the University or law enforcement, they will not receive University sanctions for violations of alcohol and/or drug use policies occurring at or near the time of the incident(s). Amnesty does not preclude or prevent action by police or other legal authorities pursuant to relevant state or federal criminal statutes.

In the case where a law enforcement agency is in the process of gathering evidence and at the request of law enforcement or University general counsel, the University will temporarily suspend the fact-finding aspect of the University investigation. Investigation will proceed again upon notification of the Title IX Coordinator or Investigator by University general counsel.

After each party has had the opportunity to share evidence with the investigator and to identify witnesses and other potential evidence, the investigator will prepare a preliminary report. The investigator will make the preliminary report available to the parties, which will include an interview summary from each party and witnesses, and supplemental evidence collected. The parties will have ten (10) business days to review the preliminary report and provide a response. Responses can include comments, feedback, additional evidence, request for additional investigation, new witnesses to interview, or any other evidence they deem relevant. Parties can also pose relevant questions for the other party and witness. The parties' responses will be attached to the final investigative report.

After receiving responses submitted by either party, or after the ten (10) business days has lapsed without comment, the investigator will address any relevant issues identified by the parties. If the investigator anticipates follow up will exceed five (5) business days, the investigator will notify the parties.

The investigator will issue a final investigative report. The investigator's final written report will contain all evidence from the preliminary report, any additional evidence gathered (both relevant and irrelevant), and an analysis of evidence. The investigator's report must be reviewed and approved by the Title IX Coordinator before it is issued. The investigator will provide a notification of the final investigative report to the parties simultaneously. The parties will have a minimum of ten (10) business days to review prior to a hearing date.

<u>Hearing For Prohibited Behavior Defined By Title IX Regardless of Geography</u>

*The following Hearing Process applies to the adjudication of all behaviors prohibited by Title IX as well as those occurring outside of the geographic limitations imposed by Title IX but still meeting the Title IX definition of sexual harassment.*

Hearings are a live process to seek clarifying information in order to make determinations of responsibilities and sanctions, if appropriate.  Parties are notified in writing of the date, time and location of the hearing concurrent to notification of the final investigative report.  Separate spaces can be requested by either party.  In that event, the University will ensure the hearing occurs in a manner that all parties are able to see and hear the information simultaneously with the use of appropriate synchronous technology. The hearing will be audio or video recorded. The recording will remain the property of the University. After the hearing, parties can request to view or listen to the recording but will not be provided a copy of the media file.

Prior to a hearing, parties are invited to participate in a pre-hearing meeting.  A pre-hearing is a separate meeting to learn of hearing expectations, to have questions answered, and to learn the identity of the Hearing Officer. Parties will be notified simultaneously to schedule a pre-hearing which should occur at least three (3) business days prior to the hearing.  Pre-hearings are not required. If any party does not attend a pre-hearing, that party will receive expectations and the Hearing Officer in writing. Parties have the opportunity to raise the issue, through written communication, of a potential conflict of interest within two (2) days of being advised of the identity of the Hearing Officer. The Title IX Coordinator will determine whether a conflict of interest exists. A Hearing Officer with a conflict of interest will not make determinations in a case and will be replaced by another individual that meets the qualifications to serve.

Hearing attendance is limited to only those individuals playing a role in the process including: Respondents, Complainants, Advisors, Advocates, witnesses, Hearing Officer. Throughout the hearing an Advisor and Advocate may confer quietly with their advisee, exchange notes, and suggest questions to their advisee. The Advisor and Advocate may not make a presentation or otherwise represent either party during the hearing. The Advisor has an active role in seeking clarifying information and questioning the other party and witnesses. If a party has not obtained an Advisor, one will be provided by the University at no cost to the party.

During the hearing, the Hearing Officer opens with comments and instructions. Each party, if they so choose, has an opportunity to make opening remarks. Ideal content for opening remarks includes a brief summary of the incident, highlighting support or disagreement with the final investigative report. The Complainant and the Respondent do not hold a burden of proof that a violation did or did not occur. Following each opening remark, the Hearing Officer has an opportunity to ask questions of Complainant and Respondent. The parties' Advisors will have an opportunity to ask questions of the other party. The Complainant and the Respondent are prohibited from directly questioning the other party. Witnesses will then be permitted to join the hearing, allowing the Hearing Officer, Advisor of the Complainant and Advisor of the Respondent to ask questions. Once all information has been presented and questions asked, the Complainant and the Respondent will have an opportunity to make a closing statement. Ideal information for a closing statement includes the impact of the incident and, in the event of a responsible finding, sanction and remedy requests.

All parties, including witnesses, are required to participate in order to have their evidence considered in determination of responsibility. Questioning during a hearing is conducted directly, orally, and in real time. All questions must be relevant to the incident. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. The Hearing Officer cannot access, consider, disclose or use any privileged communication or document (i.e. medical records and mental health records) unless the party voluntarily provides such evidence. Before the Complainant, the Respondent or a witness answers any question, the Hearing Officer must first determine if the question is relevant. If a question is determined to be irrelevant or must be reworded, the rationale for such determination will be recorded by the Hearing Officer. If a party, including Complainant, Respondent, or witness, is not available or does not participate in questioning, the Hearing Officer cannot rely on any statement presented by that individual to make a determination of responsibility. The Hearing Officer cannot draw inference about responsibility based solely on a party's or witnesses' absence from the hearing or refusal to answer questions.

The Hearing Officer will make findings of fact, applying a preponderance of the evidence standard (i.e., more likely than not), and will determine based on those findings of fact whether a violation of this policy occurred. If the Hearing Officer determines that a violation has occurred, the Hearing Officer shall review a written confidential report regarding the background of the Respondent, any prior incidents of misconduct in which the Respondent has been involved, and a report of sanctions/supportive measures previously applied for offenses of a nature similar to the current case.

The Hearing Officer has five (5) business days from the date of the hearing to issue a written letter to the Title IX Coordinator with the following:

18

- Summary of allegation;
- Identification of prohibited behavior;
- Procedural steps from receipt of Formal Complaint to hearing;
- Findings of fact;
- Conclusion summarizing how the behavior is applied to the policy;
- Determination of responsibility for each allegation including a rationale;
- Disciplinary sanctions  including a rationale;
- Restorative remedies including a rationale; and
- Appeal procedures.

If the report of a violation of the Sexual Misconduct Policy also implicates other potential violations of the University's Code of Student Conduct (in the case of students) or potential violations of other University policies and the decision has been made to address them as one case (see Intake and Assessment),  and the Respondent is found to be not in violation of the Sexual Misconduct Policy, but that violations of other University policies may have occurred,  the Hearing Officer will make determinations of responsibility and sanctions for the remaining policies.  If the Respondent is found to be responsible for both the Sexual Misconduct Policy and violations of other University policies, the Hearing Officer will make determinations for sanctions.

The Title IX Coordinator will then relay the information simultaneously to the Complainant and to the Respondent, along with the procedures to appeal the decisions.

<u>Hearings For All Other Sexual Misconduct</u>
Hearings are a live process to seek clarifying information in order to make determinations of responsibilities and sanctions, if appropriate.  Parties are notified in writing of the date, time and location of hearing concurrent to notification of the final investigative report.  Separate spaces can be requested by either party.  In that event, the University will ensure the hearing occurs in a manner that all parties to see and hear the information simultaneously with the use of appropriate synchronous technology. The hearing will be audio or video recorded. The recording will remain the property of the University. After the hearing, parties can request to view or listen to the recording but will not be provided a copy of the media file.

Prior to a hearing, parties are invited to participate in a pre-hearing meeting.  A pre-hearing is a separate meeting to learn of hearing expectations, to have questions answered and to learn the identity of the Hearing Officer.  Initial cross-examination questions of the other party and witnesses must be submitted during the pre-hearing. Parties will be notified simultaneously to schedule a pre-hearing which must occur at least three (3) business days prior to the hearing.  Parties have the opportunity to raise the issue, through written communication, of a potential conflict of interest within two (2) days of being advised of the identity of the Hearing Officer. The Title IX Coordinator will determine whether a conflict of interest exists. A Hearing Officer with a conflict of interest will not make determinations in a case and will be replaced by another individual that meets the qualifications to serve.

Hearing attendance is limited to only those individuals playing a role in the process including: Respondents, Complainants, Advisors, Advocates, witnesses, Hearing Officer.

 Throughout the hearing an Advisor and Advocate may confer quietly with their advisee, exchange notes, and suggest questions to their advisee. The Advisor and Advocate may not make a presentation or otherwise represent either party during the hearing.

During the hearing, the Hearing Officer opens with comments and instructions. Each party, if they so choose, has an opportunity to make an opening remark.  Ideal information for opening remarks includes a brief summary of the incident highlighting support or disagreement with the final investigative report. Parties do not hold a burden of proof that a violation did or did not occur.
Following each opening remark, the Hearing Officer has an opportunity to ask questions of Complainant and Respondent. The parties' will have an opportunity to ask follow-up cross examination questions of the other party or witnesses, not initially submitted during pre-hearing. All follow-up cross examination questions by the parties must be in writing and are submitted to the Hearing Officer to ask. Witnesses will then be permitted to join the hearing allowing the Hearing Officer, Advisor of the Complainant and Advisor of the Respondent to ask questions.  Once all information has been presented and questions asked, the Complainant and Respondent will have an opportunity to make a closing statement.  Ideal information for a closing statement includes, the impact of the incident, and in the event of a responsible finding, sanction and remedy recommendations.

Questioning during a hearing is conducted directly, orally and in real time by the Hearing Officer.  All questions must be relevant to the incident. Before the Complainant, Respondent or witness answer any question, the Hearing Officer must first determine if the question is relevant. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. The Hearing Officer cannot access, consider, disclose or use any privileged communication or document (i.e. medical records and mental health records) unless the party voluntarily provides such evidence. If a question is determined to be irrelevant or must be reworded, the rationale for such determination will be recorded by the Hearing Officer. The Hearing Officer cannot draw inference about responsibility based solely on a party's or witnesses' absence from the hearing or refusal to answer questions.

The Hearing Officer will make findings of fact, applying a preponderance of the evidence standard (i.e., more likely than not), and will determine based on those findings of fact whether a violation of this policy occurred. If the Hearing Officer determines that a violation has occurred, the Hearing Officer shall review a written confidential report regarding the background of the Respondent, any prior incidents of misconduct in which the Respondent has been involved, and a report of sanctions/supportive measures previously applied for offenses of a nature similar to the current case.

The Hearing Officer has five (5) business days from the date of the hearing to issue a written letter to the Title IX Coordinator with the following:
- Summary of allegation;
- Identification of prohibited behavior;
- Procedural steps from receipt of Formal Complaint to hearing;
- Findings of fact;
- Conclusion summarizing how the behavior is applied to the policy;

- Determination of responsibility for each allegation including a rationale;
- Disciplinary sanctions  including a rationale;
- Restorative remedies including a rationale; and
- Appeal procedures.

If the report of a violation of the Sexual Misconduct Policy also implicates other potential violations of the University's Code of Student Conduct (in the case of students) or potential violations of other University policies, and the decision has been made address them as one case (see Intake and Assessment),  and the Respondent is found to be not in violation of the Sexual Misconduct Policy, but violations of other University policies may have occurred, the Hearing Officer will make determinations of responsibility and sanctions for the remaining policies.  If the Respondent is found to be responsible for both the Sexual Misconduct Policy and violations of University policies, the Hearing Officer will make determinations for sanctions.

The Title IX Coordinator will then relay the information simultaneously to the Complainant and to the Respondent, along with the procedures to appeal the decisions.

Appeals

Following the dismissal of a case or at the conclusion of a hearing, an appeal may be made by any party based only on the following criteria:

- A substantive violation of the procedures set forth in this policy has occurred which, in the context of the case, is likely to have the effect of changing the outcome; or
- The appellant has substantive and relevant new information that was not available at the time of the dismissal or hearing that may change the outcome; or
- Any person in the resolution of the incident had a conflict of interest or bias that affected the outcome; or
- The appellant believes the sanctions are not commensurate with the violation.

An appeal will be accepted by the Title IX Coordinator in writing for five (5) business days following the notification of dismal or Hearing Officer's findings. Upon receipt of an appeal, the Title IX Coordinator will notify the other parties in writing. Upon request, all parties may review appeals submitted by any party.

The Title IX Coordinator, having received the appeal, will convene an Administrative Panel for Appeals, a 3-person panel of appropriately trained faculty and staff, for review of the appeal. Parties have the opportunity to raise the issue of a potential conflict of interest or bias within two (2) days of being advised of the identity of the Administrative Panel. The Title IX Coordinator will determine whether a conflict of interest or bias exists. The Administrative Panel member will not make determinations in a case in which they have a conflict of interest or bias.

The Title IX Coordinator will forward the final investigative report, any evidence submitted during the hearing, and the hearing letter to the Appeals Panel. The Appeal Panel will have access to the documents a minimum of five (5) business days prior to issuing a finding on the appeal. The Administrative Panel must make a determination regarding the appeal within fifteen (15) days of notification of dismissal or notification of hearing outcome.

The Appeals Panel may request clarification on the facts from the Hearing Officer, investigator, Title IX Coordinator or any party. The Appeals Panel will first make a determination of merit for the appeal. If no merit is found, the Appeals Panel will notify the Title IX Coordinator that the appeal will not move forward.

If merit is found for the appeal, the Appeals Panel will make a determination on the next course of action:

- Modify the outcome;
- Remand for rehearing;
- Affirm the original findings and sanctions imposed.

Upon determination by the Appeals Panel, the Title IX Coordinator will immediately be notified. Both parties will simultaneously be sent written notification of the appeal decision including a rationale for the decision. Any change made by the Administrative Panel for Appeals as a result of a hearing is final, and not subject to further appeal. If appeal is as a result of a dismissal and the Administrative Panel for Appeals modifies the outcome, the parties maintain the right to appeal at the conclusion of a hearing. Findings and/or sanctions of this Policy cannot be grieved through the applicable Grievance Policy.

All materials including supportive measures, investigative report, audio recording, appeals and official correspondence will be maintained for a period of seven (7) years.

## V.   SANCTIONS

Student Sanctions
Detailed descriptions are available in the Student Handbook under the Student Conduct Policy.

- Written reprimand
- Completion of educational program(s)/workshop(s)
- Participation in psychological, physical, or substance abuse evaluations and/or counseling
- Conduct probation: Loss of ability to participate in co-curricular activities
- Educational reflection paper
- Fines and restitution
- Housing Probation
- Housing Reassignment
- Housing Suspension (deferred)
- Housing Suspension
- Housing Termination
- Loss of Privileges
- Parental Notification
- Revocation of admission and/or degree
- Service requirement
- University Suspension (deferred)
- University Suspension (up to two years)
- Expulsion.

<u>Employee Sanctions</u>

Detailed descriptions are available in the Employee Progressive Discipline Policy.  In addition to the Sanctions identified in the Employee Progressive Discipline Policy, the following may also apply:

- Required participation in non-credit educational programs
- Required participation in psychological, physical, or substance abuse evaluations
- Restitution.

## VI.    <u>RELATED DOCUMENTS</u>

- Annual Security and Fire Safety Report
- Employee Handbook
- Faculty Service Information
- Formal Complaint Form
- Mandatory Training Policy/Matrix
- Notification of Complainant's Rights
- Notification of Respondent's Rights
- Student Handbook
- Employee Progressive Discipline Policy
- Administrative Leave Policy.

   <u>APPENDIX A – List of Title IX Team</u>
   <u>APPENDIX B – List of Confidential Employees</u>
   <u>APPENDIX C– List of Mandatory Reporters</u>
   <u>APPENDIX D – Rights & Responsibilities</u>
   <u>APPENDIX E – Resources</u>
   <u>APPENDIX F – Third Party Vendors</u>

## VII.    <u>SIGNATURE OF APPROVAL</u>

<u>University President</u>:

<u>Approval Date</u>:                       July 29, 2020

23

APPENDIX A

| TITLE IX TEAM<br>www.usciences.edu/titleix<br>titleix@usciences.edu | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Office Location** | **Email** | **Phone** |
| **Jessica White Rickmond** | Title IX Coordinator | Whitecar Hall | j.rickmond@usciences.edu | 215-596-7635 |
| **Laura Mandos** | Deputy Title IX Coordinator - Faculty<br>*Associate Dean Philadelphia College of Pharmacy* | Griffith Hall | l.mandos@usciences.edu | 215-596-8585 |
| **Ruth Roberts** | Deputy Title IX Coordinator - Staff<br>*Director of Human Resources* | Goodman Hall | rroberts2@usciences.edu | 215-596-8697 |
| **Ross Radish** | Deputy Title IX Coordinator - Students<br>*Vice President of Student Affairs & Dean of Students* | Whitecar Hall | r.radish@usciences.edu | 215-596-8950 |
| **Caroline Kelleher** | Title IX Investigator | Alumni Hall | ckelleher@usciences.edu | 215-596-7041 |

As of 06/01/2020

24

APPENDIX B

| CONFIDENTIAL RESOURCES | | | |
|---|---|---|---|
| **Name** | **Position** | **Office Location** | **Phone** |
| **Dr. Barb Siebert** | Director, Student Health | Whitecar Hall, Suite 1200 | 215-596-8980 |
| **Kirstin Patragnoni-Sauter** | Nurse Practitioner | Whitecar Hall, Suite 1200 | 215-596-8980 |
| **Floriya Tkachuk-Mattioli** | Nurse Practitioner | Whitecar Hall, Suite 1200 | 215-596-8980 |
| **Maureen Hopkins** | Medical Assistant | Whitecar Hall, Suite 1200 | 215-596-8980 |
| **Dr. Karen Levinson** | Director, Student Counseling | Whitecar Hall, Suite 1200 | 215-596-8536 |
| **Dr. Natalie Petyk** | Associate Director, Student Counseling | Whitecar Hall, Suite 1200 | 215-596-8536 |
| **Dr. Benjamin Barnes** | Staff Psychologist | Whitecar Hall, Suite 1200 | 215-596-8536 |

As of 06/01/2020

25

APPENDIX C

| Mandatory Reporters | |
|---|---|
| **Department** | **Position** |
| All Academics | Deans<br>Associate Deans |
| Athletics | All |
| Campus Recreation | Director<br>Assistant Director |
| Career & Professional Development | Director |
| Dean of Students | All |
| Graduate Studies | Director |
| Human Resources | Director<br>Senior Manager |
| International & Non-Traditional Students | All |
| President | President<br>Executive Assistant |
| Provost | Provost |
| Public Safety | All |
| Residence Life | All |
| Student Accommodations | All |
| Student Conduct & Grievances | All |
| Student Life | All |
| Vice President of Finance | Chief Financial & Operating Officer |

As of 06/01/2020

APPENDIX D
RIGHTS AND RESPONSIBILITIES

**PRIVACY AND CONFIDENTIALITY** - The University is committed to protecting the privacy of all individuals involved in the resolution of a report under this policy. The University also is committed to providing assistance to help students, employees and third parties make informed choices. With respect to any report under this policy, the University will make reasonable efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate prohibited conduct, prevent its recurrence, and remedy its effects. Information related to a report of prohibited conduct will be shared with a limited circle of University employees who "need to know" in order to assist in the assessment, investigation and resolution of the report.

**ADVISORS** - Both the Complainant and Respondent have the opportunity to be advised by an advisor of their choice (including legal counsel, at their expense) at any stage of the process. The advisor can accompany the parties at any meeting or hearing in which the parties are requested to be present. The University will communicate directly with the parties, and will not engage with an advisor. An advisor may not speak for either party but may advise in private. Any information or communication shared with an advisor will come from the parties and not the University.

**RETALIATION** - The University prohibits any form of retaliation. Retaliation is any adverse action taken against a person for making a good faith report of prohibited conduct or participating in any proceeding under this Policy. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of prohibited conduct. Retaliation does not include good faith actions lawfully pursued in response to a report of prohibited conduct. Information about any incident of retaliation should be reported to the Title IX Coordinator (Jessica White Rickmond 215-895-7635 or titleix@usciences.edu)

**CRIMINAL REPORTS** - Conduct may be reported to law enforcement, separate and apart from any report made to the University. The University's investigation and resolution process is independent of any criminal investigation or proceeding. Conduct may violate the University's Sexual Misconduct Policy even if it does not violate the law. A respondent who is found to be in violation of the Sexual Misconduct Policy may also be subject to criminal charges.

**APPEAL** - Parties will be informed of their appeal rights under the University's investigation and complaint resolution process.

**OPTIONS** - The Complainant is not required to decide how to proceed at the time a report is made. Possible options include:
❑ Receive resources both on campus and in the community.
- Counseling services
- Victim Advocacy
- Medical
- Legal

27

❑ Report the incident to law enforcement at any time.
- • Upon request, the University will assist in doing so.
- • If the incident occurred on or near campus, the Philadelphia Police Department 18th District can be reached at (215) 686-3180.

❑ Report the incident to the Title IX Coordinator or any responsible employee.

❑ Investigate and adjudicate the incident using the University's Sexual Misconduct Policy, including an informal adjudication (i.e. mediation or restorative justice).
- • The University may need to investigate and take action even if the Complainant does not wish to proceed with the investigation and adjudicative process.

❑ Receive interim or supportive measures. Interim measures include but are not limited to:
- • Adjustment of course schedules;
- • Adjustments for assignment or tests;
- • Change of living or working arrangements;
- • No-contact orders; and
- • Public Safety escort

❑ Complainant may withdraw a complaint prior to the conclusion of an investigation.

❑ None of the above listed options

APPENDIX E

| ON CAMPUS RESOURCES | | |
|---|---|---|
| **Name** | **Phone** | **Additional Information** |
| **Counseling** | (215) 596-8536 | Confidential |
| **Dean of Students** | (215) 596-8950 | |
| **Human Resources** | (215) 596-7533 | |
| **Public Safety** | (215) 596-7000 | Available 24/7/365 |
| **Student Health** | (215) 596-8980 | |
| OFF CAMPUS RESOURCES | | |
| **Emergency Response** | 911 | |
| **Menergy** | (215) 242-2235 | |
| **Men's Resource Center** | (215) 564-0488 | |
| **Philadelphia Police – Sexual Victims Unit** | (215) 685-3251 | |
| **Philadelphia Sexual Assault Response Center** | (215) 800-1589 | Sexual Assault Medical Evaluation<br>300 E Hunting Park Avenue<br>Philadelphia, PA 19124 |
| **Women Against Abuse** | (866) 723-3014 | |
| **Woman Organized Against Rape (WOAR)** | (215) 985-3333 | |

APPENDIX F

**Third Party Vendors**

Sexual Misconduct can impact the entire USciences community and therefore is also applicable to third parties vendors and their employees. A third party vendor is contracted to provide a service for the University. Third party employees are the individual employed by the third party vendor and provide that service for the University. For additional information regarding applicable behavior, review the Sexual Misconduct Policy including the "Entities Affected by the Policy" section. An incident may be addressed by a third party vendor's policy as well as the University's Sexual Misconduct Policy. All third party employees should be familiar with the applicable polices of the University and their employer.

*Reporting*

Any member of the University community, including third party employees, who is aware of an incident of sexual misconduct can report to the Title IX Coordinator.  Instructions on how to submit a report, including an option to report anonymously, are available at www.usciences.edu/titleix.

*Rights & Procedures*

When the Complainant or Respondent is a third party, the University will uphold the "Rights and Responsibilities" identified in Appendix D. The University will follow procedures as outlined in the Sexual Misconduct Policy. The Title IX Coordinator or a member of the Title IX Team will notify the point of contact with the third party vendor upon receipt of a Formal Complaint. The Title IX Coordinator or a member of the Title IX Team may seek the assistance of the third party vendor to implement supportive measures, case resolution, and sanctions. In the event, a Complainant does not file a Formal Complaint or requests limited action, the University may disclose relevant information with the third party vendor regarding the Complainant and Respondent, using the following criteria:

- The seriousness of the behavior;
- The respective ages and roles of the involved parties;
- Whether the University has received multiple reports of prohibited behavior under this policy involving the Respondent;
- Whether the circumstances suggest there is a risk of the Respondent committing additional acts of prohibited behavior;
- Whether the Respondent has a history of arrests or records indicating a history of violence;
- Whether the Respondent threatened further violence against the Complainant and other individuals involved;
- Whether the reported behavior was committed by multiple individuals;
- Whether the reported behavior was perpetrated with a weapon; and
- Whether the University possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).

The Sexual Misconduct Policy does not negate a third party vendor's policies and procedures and can be implemented concurrently.