IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-358 |
| | : | |
| UNIVERSITY OF THE SCIENCES | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                    **September 1, 2020**

Plaintiff John Doe brings this breach of contract and Title IX action against Defendant University of the Sciences. Doe claims the University violated its written disciplinary procedures when it expelled him from the University in January 2019 after investigating two instances of alleged sexual assault. Doe filed the instant Motion for Temporary Restraining Order and Preliminary Injunction seeking reinstatement as a student and to enjoin the University from imposing any disciplinary sanctions against him. Because Doe has failed to establish immediate, irreparable harm if an injunction is not granted, the Court will deny the Motion.

**BACKGROUND**

Doe is a resident of North Carolina who, until January, 2019, was a student at the University, a private university located in Philadelphia, Pennsylvania. The relationship between Doe and the University was governed by the University's Sexual Misconduct Policy (the Policy), and Student Handbook. *See* Am. Compl. Exs. A-C, ECF No. 19.

Prior to the start of Doe's senior year, two female students (Jane Roe 1 and Jane Roe 2) accused him of sexual assault, in violation of the Sexual Misconduct Policy. On August 24, 2018, Jane Roe 1 reported to the University Doe sexually assaulted her on or about November 3 or 4, 2017, by failing to obtain her consent prior to engaging in intercourse without a condom. On August 30, 2018, Jane Roe 2, a sorority sister of Jane Roe 1, reported to the University Doe had

sexually assaulted her on or about January 14, 2018, by engaging in sexual intercourse with her while she was incapacitated. The University then proceeded to investigate both claims simultaneously.

On August 30, 2018, the University's Title IX coordinator notified Doe that a formal investigation was being initiated to determine whether he had violated the Sexual Misconduct Policy. On September 5, 2018, the University hired outside counsel to investigate the Roes' allegations. The investigator interviewed Roe 1, Roe 2, Doe, and ten witnesses. She also conducted follow-up interviews with Roe 1, Roe 2, and Doe. The investigator tendered her Report of Investigation on November 13, 2018, concluding a preponderance of the evidence established Doe violated Section 1.6 of the Sexual Misconduct Policy by engaging in sexual intercourse with Roe 1 and Roe 2 without securing their affirmative consent. Doe was notified of the result the following day.

On December 7, 2018, the Title IX Coordinator informed Doe that, two days earlier, on December 5, 2018, an administrative panel convened to determine the sanctions. The panel determined the appropriate sanction was expulsion, with a notation on his academic transcript, a campus restriction, and a no contact order with respect to Roes 1 and 2. Doe submitted a written appeal, which was denied after review by a separate administrative panel. Doe's expulsion became effective in mid-January, 2019.

On January 24, 2019, Doe filed a Complaint and motion for a temporary restraining order and preliminary injunction. After a two-day evidentiary hearing, the Court denied the motion. *See* Order, Feb. 14, 2019, ECF No. 14. The University then moved to dismiss the action. Doe filed an Amended Complaint on April 15, 2019, and the University again moved to dismiss. On July 29, 2019, the Court granted the University's motion to dismiss, finding Doe failed to plead facts

suggesting gender-motivated bias in his disciplinary proceedings and the existence of specific contract provisions the University may have violated during his disciplinary proceedings, *inter alia*. *See*, Order, July 29, 2019, ECF No. 37. Doe appealed the Court's July 29 Order. Notice of Appeal, Aug. 28, 2019, ECF No. 41. On May 29, 2020, the Third Circuit reversed and remanded the case for further proceedings. *Doe v. Univ. of the Scis.*, 961 F.3d 203 (3d Cir. 2020). On August 18, 2020, Doe filed the instant Motion for a Temporary Restraining Order and Preliminary Injunction. Mot. for TRO & Prelim. Inj., ECF No. 58.[1] The Court conducted a hearing on the Motion on August 26, 2020, where the parties presented argument.[2]

**DISCUSSION**

The Court will deny the Motion because Doe has failed to establish he will be irreparably harmed if the Motion is not granted. To obtain a temporary restraining order or preliminary injunction pursuant to Federal Rule of Civil Procedure 65, a movant must first demonstrate the two "most critical" factors: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (alteration in original). If a movant meets both of these two "gateway factors," a district court balances them alongside two additional factors: "(3) the possibility of

---

[1] Although Doe's Motion is titled as one for a "Temporary Restraining Order and Preliminary Injunction," the Court construes Doe's request as one for a preliminary injunction because each party: (1) was given notice of Doe's request; (2) submitted briefing in support of or in opposition to the request; and (3) participated fully in an evidentiary hearing, during which both sides had the opportunity to present evidence. *See BABN Techs. Corp. v. Bruno*, No. 98-3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998). Deciding this Motion as one for a preliminary injunction does not alter the parties' substantive burdens, but does afford Doe the immediate right to appeal this Court's decision. *See* 28 U.S.C. § 1292(a)(1) (vesting courts of appeals with jurisdiction to hear appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions").

[2] At the hearing, despite having the opportunity to present evidence, neither party chose to do so.

harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* at 179, 176. A preliminary injunction is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

Doe alleges that the University breached its contract with him by failing to provide him the fairness promised to students under the University's Sexual Misconduct Policy.[3] Mot. for TRO & Prelim. Inj. 12, ECF No. 58. The Court finds Doe has demonstrated a reasonable probability of eventual success on the merits of his breach of contract claim.

To succeed on a breach of contract claim under Pennsylvania law, the plaintiff must prove: "(1) the existence of a contract, including its essential terms[;] (2) a breach of the contract[;] and[] (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). The parties do not dispute that the relationship between the University and Doe is contractual and, if the University breached its contract with Doe, the breach would cause damages. The only element before the Court is therefore whether the University breached its contract with Doe.

The terms of the contract between Doe and the University were laid out in the Student Handbook and accompanying Policy. *See* Am. Compl. Exs. A-C, ECF No. 19. In both documents, the University promises all students that it will "[e]ngag[e] in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable[.]" *Id.* Ex. B. The Policy requires its Title IX Coordinator to oversee "a prompt, fair, [and] equitable investigation and

---

[3] Doe seeks injunctive relief based only on his claim for breach of contract. Doe does not advance his Title IX claim in support of his request for injunctive relief.

resolution process for reports of prohibited conduct." *Id.* Ex. A. The Student Handbook further states that "[p]rocedures and rights in student conduct procedures are conducted with fairness to all, but do not include all of the same protections afforded by the courts." *Id.* Ex. B.

Previously, while on appeal, the Third Circuit construed the University's contractual promises of "fair" and "equitable" treatment to students accused of sexual misconduct to require "at least a real, live, and adversarial hearing and the opportunity for the accused student or his or her representative to cross-examine witnesses—including his or her accusers." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 215 (3d Cir. 2020). Applying that holding to the University's investigation of Doe, the Third Circuit stated:

> [The University] did not provide Doe a real, live, and adversarial hearing. Nor did [the University] permit Doe to cross-examine witnesses—including his accusers, Roe 1 and Roe 2 . . . [B]asic fairness in the context of sexual-assault investigations requires that students accused of sexual assault receive these procedural protections.

*Id.* at 216. At the hearing on the instant Motion, the University conceded that Doe did not receive a fair hearing under the Third Circuit's definition of what was required. Hr'g Tr. 18:1-7, Aug. 26, 2020, ECF No. 75.

To rebut Doe's likelihood of success on the merits, the University has shown evidence that Doe is scheduled for a new hearing in accordance with Title IX's new regulations on September 10, 2020. Resp. in Opp. Ex. 2, ECF No. 70. The University asserts this hearing will comply with the Third Circuit's holding in this case. *Id* at 7. This impending hearing, the University argues, defeats Doe's likelihood of success on the merits because it "eliminate[s] certain of [Doe's] allegations and issues." *Id.* at 8. The Court does not agree. Doe's breach of contract claim is that the University failed to provide him the fairness promised to students under its policies as it relates

to his initial hearing. *See* Am. Compl. ¶ 116, ECF No. 19. A new hearing under a new policy is not relevant to whether the University failed to provide Doe a fair hearing in 2018.

The University's policies required a live, adversarial hearing, where Doe could cross-examine witnesses. The University concedes Doe did not receive such a hearing prior to his expulsion. Therefore, Doe has shown a reasonable probability of success on the merits of his breach of contract claim.

While the Court finds Doe has shown a reasonable probability of success on the merits, Doe has not shown that he will be irreparably harmed if his preliminary injunction is denied. A plaintiff seeking a preliminary injunction must make a "clear showing of immediate irreparable injury." *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 358 (3d Cir. 1980) (citation omitted). The injury must constitute "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). The preliminary injunction "must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Additionally, "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).

Doe contends he will suffer irreparable harm because "the imposition of discipline by [the University] would deny [him] the benefits of education at his chosen school," damage his reputation, "prevent him from competing athletically," result in the loss of a scholarship, and "affect his ability to enroll at other institutions of higher education and to pursue a career." Mot. for TRO & Prelim. Inj. 12, ECF No. 58. He further alleges immediate reinstatement is necessary

to apply to medical school this year. Reply in Supp. Ex. 1, ECF No. 72. The Court finds these injuries do not constitute irreparable harm.[4]

Initially, much of the harm Doe alleges would have occurred 19 months ago, when he was expelled from the University, and thus is not relevant to the instant irreparable harm analysis. In assessing irreparable harm, "[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm *at the time the preliminary injunction is to be issued.*" *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985) (emphasis added); *see also Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) ("[A] showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction."). Consequently, Doe's allegations that he will suffer damage to his reputation, will be "prevent[ed] him from competing athletically," and lose his scholarship, are immaterial to the irreparable harm analysis at this time as they are past harms. *See SI Handling Sys., Inc.*, 753 F.2d at 1264.

Nevertheless, even considering Doe's alleged past harms, these injuries are either readily compensable through monetary damages or too speculative. Any loss in scholarship money can undeniably be compensated by monetary damages. Additionally, any harm to Doe's reputation between now and the time it takes to resolve his case on the merits is too speculative. Doe has also presented no evidence regarding his claim that he will be prevented from competing athletically.

Doe's remaining allegations that discipline "den[ies] [him] the benefits of education at his chosen school" and "affect[s] his ability to enroll at other institutions of higher education and to pursue a career" do not constitute irreparable harm. If Doe were to prevail on the merits of his underlying claims, he would be reinstated to the University. And, if Doe is reinstated, the only

---

[4] Doe is not seeking to enjoin "the imposition of discipline"—discipline has already occurred. He has been expelled since January 2019.

harm he will have suffered is a greater delay in resuming his education. Thus, the only harm remedied through the issuance of a preliminary injunction is the length of delay Doe faces in resuming his education. This Court, however, has previously found a delay in education does not constitute irreparable harm because it can be adequately compensated with money damages. *See Mahmood v. Nat'l Bd. of Med. Examiners*, No. 12-1544, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) ("[D]elays in . . . education services do not constitute irreparable harm").[5] Other courts in this Circuit have reached the same conclusion. *See, e.g.*, *Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 2097991, at *7 (D.N.J. May 1, 2020) ("If Plaintiff prevails on the merits of his underlying claims and is reinstated . . . he will have suffered a delay in his education, . . . which can be remedied through monetary compensation.");  *Howe v. Pa. State Univ. - Harrisburg*, No. 16-102, 2016 WL 393717, at *6 (M.D. Pa. Feb. 2, 2016) *appeal dismissed*, No. 16-1258 (3d Cir. Mar. 29, 2016) ("[T]he court finds that even if the plaintiff would experience a delay as a result of his suspension this would not constitute irreparable harm."). While Doe will suffer injury from continued delay in his education, his injury is compensable in money damages, and does not constitute an immediate, irreparable harm that must be redressed through the issuance of a preliminary injunction.

Further, Doe acknowledges he has one semester of work remaining and one of the courses he needs to graduate is only offered during the University's spring semester. Reply in Supp. Ex. 1, ECF No. 72. It is therefore not apparent whether granting an injunction at this stage would

---

[5] Doe cites *Haney v. West Chester University*, No. 18-2456, 2018 WL 3917975 (E.D. Pa. Aug. 16, 2018) for the principle that expulsion causes irreparable harm by affecting a plaintiff's ability to enroll at other institutions and to pursue a career. Mot. for TRO & Prelim. Inj. 13, ECF No. 72. However, in *Haney*, the plaintiff was seeking to enjoin a disciplinary hearing that may have resulted in his expulsion. Here, Doe has been expelled since January 2019. The harm Doe is facing absent a preliminary injunction here is therefore distinguishable.

mitigate any delay in Doe's graduation. Doe rebuts this by arguing (1) he would benefit from taking classes this semester; and (2) immediate reinstatement is necessary for him to apply to medical school. *Id.* Both alleged injuries are too speculative to constitute irreparable harm. With respect to applying to medical school, Doe has not made a sufficient showing that, absent a preliminary injunction, he would be unable to gain admission to medical school.[6] Even if he had, any delay in admission to medical school can be compensated with money damages. *See In re Lei Ke*, 531 F. App'x 187, 191 n.3 (3d Cir. 2013) (finding a dismissed student's present inability to pursue a medical education was not irreparable harm). Accordingly, the Court concludes Doe has failed to establish irreparable harm necessary to justify a preliminary injunction.[7]

**CONCLUSION**

Because Doe has failed to demonstrate he will be irreparably harmed if an injunction is not issued, Doe's Motion for Temporary Restraining Order and Preliminary Injunction will be denied.

An appropriate order was previously issued on August 31, 2020.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[6] Doe has provided the Court with a rejection letter from East Carolina University's Office of Undergraduate Admissions, stating Doe's rejection is based upon a recommendation from East Carolina University's Admissions Safety Committee. Reply in Supp. Ex. 1, ECF No. 72. While the letter is relevant to whether Doe could successfully apply to medical school this cycle, the claim remains too speculative to warrant immediate injunctive relief.

[7] Because the Court finds Doe failed to establish irreparable harm, it need not address the parties' arguments with respect to the possibility of harm to others from granting the injunction, or the public interest in granting injunctive relief. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to demonstrate irreparable injury[] must necessarily result in the denial of a preliminary injunction.").