UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | Case Number: 2:19-cv-00358 |
| Plaintiff-, | Judge: SANCHEZ |
| v. | STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT |
| UNIVERSITY OF THE SCIENCES. | |
| Defendants-Appellees | |

Pursuant to the Court's Policies and Procedures §II(E)(7), Plaintiff John Doe respectfully submits this Statement of Material Facts as to which Plaintiff contends there is no genuine issue to be tried. This Statement pf Material Facts is submitted in support of Plaintiff's Motion for a Partial Summary Judgment (Doc#71).

1. Plaintiff John Doe was a student at the University of the Sciences (the "University"). (Amended Complaint (Doc#19) ¶3; Affidavit of John Doe (Doc#58-1) ¶2.)

2. The University is a private higher educational institution founded in 1821. The University is located in Philadelphia, Pennsylvania and has approximately 1200 undergraduate students. (Amended Complaint (Doc#19) ¶4.)

3. The University receives federal funding. (Amended Complaint (Doc#19) ¶83.)

4. Doe is a North Carolina resident who was an undergraduate student at the University. He paid his tuition, attended classes, and had a more than respectable 3.29 GPA. Doe had completed 3½ semesters towards a degree in Biomedical Sciences before he was expelled. (Amended Complaint (Doc#19) ¶3; Affidavit of John Doe (Doc#58-1) ¶2.)

1

5. The University adopted a Sexual Misconduct Policy (the "Policy"). (Sexual Misconduct Policy Definitions, Process and Procedures, Amended Complaint (Doc#19) Ex. A.)

6. The Policy provides that a "person who wants to engage in a specific sexual activity is responsible for obtaining consent for that activity." (Amended Complaint (Doc#19) Ex. A §2.1.1.)

7. The obligations of the University are triggered by a Report, which is defined as "notifying the Title IX Coordinator or other Responsible Employee of" possible misconduct. (Amended Complaint (Doc#19) Ex. A §2.3.1.)

8. Following a Report, the University's Title IX Coordinator is required to meet with the accused student in order to provide "written notification of the allegations," as well as information about the Policy. (Amended Complaint (Doc#19) Ex. A §2.10.1.)

9. The accused student may have an "advisor" present during all meetings, but the advisor may "not speak… at any meeting" or "direct questions to any administrator, party or witness in the process (Amended Complaint (Doc#19) Ex. A §2.14.2.)

10. The Title IX Coordinator assigns an investigator; this investigator makes "findings of fact, applying a preponderance of the evidence standard (i.e., more likely than not), and determine[s] based on those findings of fact whether a violation of this policy occurred. (Amended Complaint (Doc#19) Ex. A §2.10.2.) The investigator may conduct interviews of the alleged victim, the accused student, and "witnesses provided by both the complainant and respondent." (Amended Complaint (Doc#19) Ex. A §§2.10.4-2.10.7.)

11. The purpose of the interviews is to "gather and assess information about the incident(s) at issue" and is "not to solicit general information about either party's character." (Amended Complaint (Doc#19) Ex. A §2.10.5.)

12. The accused student is never given an opportunity to question his accuser. Instead, a draft investigative report is provided to the parties. The alleged victim and the accused student may review "preliminary factual findings" and "submit a written response to the investigator." (Amended Complaint (Doc#19) Ex. A §2.10.5.)

13. The Student Handbook (which sets forth the University's rules and is a contract) guarantees certain rights to students accused of sexual misconduct. The Student Handbook provides that the Policy "serves to demonstrate the University's commitment to… engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable." (Amended Complaint (Doc#19) Ex. B at 37.)

14. A number of the University' policies require the school to provide a fundamentally fair system. The University's Student Handbook, provides: "Procedures and rights in student conduct procedures are conducted with fairness to all…" A policy statement attached to the Handbook, states that the University is committed to "engaging in investigative inquiry and resolution of reports that are adequate, reliable, impartial, prompt, fair and equitable." (Amended Complaint (Doc#19) Exhibits A, B; Affidavit of John Doe (Doc#58-1) ¶3.)

15. The Handbook summarizes the University's obligations to provide a fair hearing process even if the formal rules of courts are not utilized:

> Students should be aware that the student conduct process is quite different from criminal and civil court proceedings. *Procedures and rights in student conduct procedures are conducted with fairness to all*, but do not include all of the same protections afforded by the courts. Due process, as defined within these procedures, assures written notice and the opportunity for a hearing before an objective decision-maker. No student will be found in violation of a University policy without information showing that it is more likely than not that, a policy violation occurred. Any sanctions will be proportionate to the severity of the violation and to the cumulative conduct history of the student.

(Amended Complaint (Doc#19) Ex. B at 49 (emphasis supplied).)

16. If the investigator determines that a violation has occurred, sanctions are determined by a 3-person panel of faculty and staff. (Amended Complaint (Doc#19) Ex. A §2.11.2.)

17. An appeal is available, but is limited to certain situations, such as a "substantive violation of the procedures" which "is likely to have the effect of changing the outcome," new evidence, "the decision regarding responsibility was in error," or "the sanctions are not commensurate with the violation." (Amended Complaint (Doc#19) Ex. A §2.15.1.)

18. Doe was accused of sexual misconduct following sexual encounters with two female students at the University, identified as Jane Roe 1 ("Roe 1") and Jane Roe 2 ("Roe 2"). The University retained an attorney to conduct a single inquiry into both of the allegations against Doe. (Amended Complaint (Doc#19) ¶59.)

19. Doe was provided with notice of an investigation, but was not provided details of the allegations against him. (Amended Complaint (Doc#19) ¶50.)

20. Doe was unprepared to answer some of the questions from the investigator due to the passage of time between the sexual encounters and the filing of the complaints. (Amended Complaint (Doc#19) ¶63(g.)

21. The investigator sought and received impermissible character evidence about Doe, declined to interview witnesses with information helpful to Doe, and disregarded witness statements that tended to exonerate Doe. (Amended Complaint (Doc#19) ¶¶63(a)-63(c).)

22. The investigator considered character evidence from other female students about Doe. (Amended Complaint (Doc#19) ¶65(b.)

23. The investigator failed to confront Roe 1 and Roe 2 about inconsistencies in their statements and disregarded the testimony of several witnesses who provided evidence contrary to the statements of Roe 1 and Roe 2. (*See e.g.* Amended Complaint (Doc#19) ¶¶63(c), 65(d).)

24. The investigation was completed on November 13, 2018. (Amended Complaint (Doc#19) ¶66.)

25. The investigator concluded that Doe had engaged in sexual misconduct with Roe 1 by engaging in sexual intercourse without affirmative consent. (Amended Complaint (Doc#19) ¶68.)

26. The investigator concluded that Doe had engaged in sexual misconduct with Roe 2 by engaging in sexual intercourse when Roe 2 was incapacitated due to alcohol consumption. (Amended Complaint (Doc#19) ¶69.)

27. Doe was not provided with a real, live, and adversarial hearing and the opportunity for to cross-examine witnesses — including his accusers. (Doe Affidavit (Doc#58-1) ¶4.)

28. Doe was expelled from the University. (Amended Complaint (Doc#19) ¶75, JA106.)

29. Doe's appeals were denied. (Amended Complaint (Doc#19) ¶78.)

30. Doe was not permitted the opportunity for a hearing before an objective decision-maker. (Doe Affidavit (Doc#58-1) ¶4.)

31. Doe has suffered substantial injury, damage, and loss. This loss includes diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress. (Doe Affidavit (Doc#58-1) ¶4; Supplemental Doe Affidavit. (Doc#73) ¶9.)

32. The discipline imposed by the University has denied Doe the benefits of education at his chosen school. The discipline has damaged his academic and professional reputations and has affected his ability to enroll at other institutions of higher education and to pursue a career. In addition to a tarnished disciplinary record, he also faces the stigma of being labeled 'responsible' for engaging in sexual misconduct. The stigma related to a finding of responsibility for sexual misconduct will make it difficult, if not impossible, for Doe to successfully apply to another school. (Doe Affidavit (Doc#58-1) ¶5; Supplemental Doe Affidavit. (Doc#73) ¶9.)

Respectfully submitted,

/s/ Joshua A. Engel
Riley H. Ross III
MINCEY FITZPATRICK ROSS, LLC
Two Penn Center
1500 JFK Blvd., Suite 1525
Philadelphia, PA 19102

Joshua Adam Engel (OH 0075769)
*Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served via the ECF System this September 3, 2020 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel